# WASHINGTON, BALTIMORE AND ANNAPOLIS ELECTRIC RAILROAD COMPANY

## *vs.*

## STATE OF MARYLAND, Use of Charles M. Goodwin.

*Action for Death—Evidence—Electric Railway Train—Injury to Intending Passenger—Rate of Speed.*

In an action by a father for the death of his son, it was error to permit questions to be asked of the father or mother as to their expectations in regard to future support from their son, this involving merely an expression of opinion. pp. 541, 542

In an action by a father for the. death of his son, it was error to permit questions to be asked of the father or mother as to what deceased might have said to them as to his intention to provide for them during his life, this being hearsay.

pp. 541, 542

A prayer offered by plaintiff is not defective because it is simply on the measure of damages, and contains nothing as to the right of the plaintiff to recover. p. 542

Even if the legal relation betwen a railway company and one about to board a train be that of carrier and passenger, so that the former owes to the latter the highest degree of care, this does not absolve the latter from using reasonable care for his own safety. p. 542

Though those operating an electric railway train may have seen that one, apparently a passenger, was in a position which might place him in peril, still it is not incumbent upon them to bring their train to a stop merely because they see ahead someone on the right of way, who may or may not be an intending passenger. p. 543

The doctrine of last clear chance *held* not to be applicable so as to justify recovery on account of the death of one struck by a train while crossing the track with the intention of boarding it. p. 543

A speed of from twelve to thirty miles an hour, for a train approaching a suburban station, *held* not to constitute negligence as matter of law, the question being properly what was a reasonable speed, taking into consideration the location and all the surrounding circumstances. p. 544

A prayer of defendant which left to the jury the question whether defendant's train, which killed plaintiff's son, was being operated at a reasonable rate of speed as it approached the place where he expected to board it, *held* improperly refused.

p. 544

*Decided January 12th, 1921.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

The question referred to in the second bill of exceptions, asked of plaintiff's father, was as follows:

"Q. Now if he had continued to live, do you think you could reasonably have expected that he would continue to provide for your wife and yourself, as he had done during the last three years of his life?"

The question referred to in the fifth bill of exceptions, asked of the mother of deceased, was as follows:

"If your son had lived do you think you could reasonably have expected him to continue to do for your husband and yourself as he did before he died?"

The defendant's sixth prayer was as follows:

"The defendant prays the court to instruct the jury that if they shall find from the evidence that the train of the defendant with which Charles B. Goodwin, the deceased, came into contact, was being operated at a reasonable rate of speed, and that the defendant's agent in charge of said train, when approaching Kelly's Crossing, gave timely notice of the approach of said train by sounding the usual signals, then the verdict of the jury should be for the defendant."

The cause was argued before BOYD, C. J., THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*George Weems Williams,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellant.

*Isaac Lobe Straus,* with whom were *Harry O. Levin* and *F. H. Fanseen* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the court.

This is a suit brought under Lord Campbell's Act by a father to recover substantial damages from the appellant, by reason of the killing of Charles B. Goodwin, on the line of the W., B. & A. Electric Railway Company, at or near to what is known as Kelly's Crossing, situate near Camp Meade. The accident took place on November 20th, 1918, about 2 o'clock P. M., and therefore in broad day light.

The important facts are very simple. The deceased, Charles B. Goodwin, had been employed as a plumber by Hanley & Co. at Camp Meade. On the day in question he left Camp Meade for the purpose of returning to Baltimore, and, as he neared the tracks of the W., B. & A. Railway Company, he enquired of several persons as to when he could get a train which would take him to Baltimore, and was told that he might expect a train to pass at almost any time, and was directed to the south side of the appellant's tracks, where was a cinder platform used alike for the reception and discharge of passengers and freight.

He crossed to or nearly to this cinder platform, and was then observed to turn around and apparently retrace his steps towards the north side of the tracks, and there came in contact with a train composed of a motor and five trailers coming from the east. The deceased was struck by this train, knocked down and, though still living when picked up, died before he could be transferred to the emergency hospital at Camp Meade.

The plaintiff alleged that the accident was caused by the negligence of the employees of the W., B. & A. Railway in some one or more of three respects: first, a failure to give notice or warning of the approach of the train by a watchman stationed at the crossing; second, the omission of any whistle or notice given by those operating the motor of the approach of the train, or third, because of the supposed excessively high speed at which the train was being run.

Persons not connected with either of the parties litigant, but who were at or near the scene of the accident, testified that the watchman stationed at that point by the railway did not give any warning, and apparently they are somewhat in doubt as to whether they saw the watchman at all, or whether he was in the watchman's box. These same witnesses likewise testified that they had heard no whistle or signal emanating from the train itself, though as against this latter is the positive testimony of the motorman of the train that he did give a signal whistle, and of the watchman that he was in his proper place to give warning of the approach of the train.

There were six bills of exception reserved during the trial of the case, of which five had to do with the rulings of the Superior Court of Baltimore City, in which the case was tried, upon questions of evidence, and one to the action of the court upon the prayers.

With regard to the rulings upon the first and fourth bills of exception, no error is attributable to the court, while with regard to the third, the question was a close one, but if there was error committed, it presented a case which under the prayers was error without injury.

There was, however, serious error committed in the rulings of the court which are set out in the second and fifth bills of exception. These were questions addressed to Mr. and Mrs. Goodwin, the parents of the deceased, with regard to their expectations, or what the deceased might have said to them of his intention to provide for them during his life.

In the one case it was palpably a question of hearsay, and in the other an expression of opinion only, with regard to what might be anticipated to be done by a son forty-five years old for the support of his parents. The admission by the court of this testimony could not have operated otherwise than prejudicially to the defendant company.

At the conclusion of the testimony the plaintiff offered one prayer and the defendant ten; the prayer of the plaintiff was granted, and the fourth, fifth, ninth and tenth prayers of the defendant. The plaintiff's prayer was simply a prayer on the measure of damages. It contained nothing as to the right of the plaintiff to recover, and a prayer of that character has been sustained by this Court in the case of *Director General of Railroads* v. *State, use of Hurst,* 135 Md. 496.

When we come to consider the defendant's rejected prayers, the first, second and third are all framed for the purpose of having the case withdrawn from the consideration of the jury, and these were properly refused. They involved questions of fact which, whatever may be the view of this Court in regard thereto, nevertheless rested distinctly within the province of the jury.

The seventh and eighth prayers were properly refused. This brings us to a consideration of some of the general principles applicable to cases like the present. Even if it be assumed that the legal relation which the appellant bore to the deceased was that of carrier and passenger, so that the highest degree of care was required to be exercised by the carrier for the safety of the passenger, nevertheless this does not absolve the passenger from using reasonable care for his own safety. A concise but accurate statement from many adjudicated cases will be found in 10 *C. J.* 1109 *et seq.,* where, in a very full statement of the rule of law applicable in such cases, the editor lays down the following: "A passenger who is in the act of going to or leaving the train at a place where there is an express or implied invitation for him so to do, as where it is necessary for him to cross the

WASH., B. & A. R. R. CO. vs. STATE.     543

Md.]                    Opinion of the Court.

tracks, may assume that the railroad company will so oper-
ate its other trains, or otherwise perform its duty, as not to
put him in peril, and he is not under the same obligation to
look out for his own safety by looking and listening as is in-
cumbent in general on a person who approaches a railroad
track with intent to cross it."

But there is a corresponding or correlative duty resting
upon the passenger, and though those in operation of a train,
such as that testified to in this case, may have seen that one,
apparently a passenger, was in a position which might place
him in peril, still it is not incumbent upon them to bring
their train to a stop merely because they see ahead some one
on the right of way, who may or may not be an intending
passenger.

To the westward of the point where the accident in this
case occurred there was a curve in the road, but distant from
the precise point of the accident some four or five hundred
feet.   The time and hour were such as to have made Mr.
Goodwin's position patent to the motorman upon the train,
and conversely have made the approach of the train patent to
Mr. Goodwin.   Whether the accident was the result of some
confusion of mind on Mr. Goodwin's part, or a change in
his intention, there is no means of knowing, but certain it
is that at the time the train rounded the curve he was in a
position of safety, and from this position his own act was the
immediate cause of bringing him into contact with the train,
and as such would amount to contributory negligence, for
which the appellant company could not be held responsible.

It was urged by counsel for the appellees that the doctrine
of the last clear chance was one proper to be applied in this
case, and upon that ground that the appellant company could
be held liable.   The facts, however, do not warrant the appli-
cation of the last clear chance doctrine.   It differs from the
case in 60 Md. 449, *B. & O. R. R. Co.* v. *State, use of Hauer,*
in which the accident occurred at Weaverton, while the per-
son, for whose injury recovery was sought, was passing from

544     WASH., B. & A. R. R. CO. vs. STATE.

Opinion of the Court.                    [137

one train to another, and is distinctly different from the case
of the *B. & O. R. R. Co.* v. *State, use of Malone,* 63 Md.
135, where there was an express invitation by the agent to
an old colored woman to cross to a platform while a train
was approaching.

In the view taken of the rules properly applicable, it fol-
lows that the sole remaining question of negligence is that
incident to the speed of the train by which Goodwin was
struck and killed. This is variously estimated by witnesses
at from twelve to thirty miles per hour. The court cannot
say as matter of law that either rate of speed at the point in
question in and of itself constitutes negligence, where the
railway was being operated on its own right of way.

One fact stands out clearly without contradiction, namely,
that Sergeant O'Reilly of the military police stepped from
the train while in motion, and as he said, "without any jar."
This would seem to have been manifestly impossible if the
train was running at the speed of thirty miles per hour, but
irrespective of the rate of speed per hour which the train may
have been running, it was a question not of exact speed, but
of a reasonable speed, taking into consideration the location
of the accident, and all the surrounding circumstances, and
as such should have been left to the finding of the jury. This
the Superior Court failed to do when it refused the defend-
ant's sixth prayer, and thereby committed error of a char-
acter that cannot be regarded otherwise than as prejudicial.

For the reasons above indicated the judgment appealed
from must be reversed and the cause remanded for a new
trial.

Much as this is to be regretted, in view of the fact that
the case has already been twice tried before a jury, no other
course seems consonant with justice, under the facts as testi-
fied to in this case.

> *Judgment reversed and cause remanded for a*
> *new trial, costs to abide the final determi-*
> *nation of the case.*