This is a suit under Lord Campbell's Act, by a father, Charles M. Goodwin, to recover for alleged negligent killing of his son, Charles B. Goodwin, by the Washington, Baltimore and Annapolis Electric Railroad Company. From a judgment in favor of plaintiff, the defendant appealed.
For the purposes of this opinion the facts may be stated very briefly.
At about two o'clock P.M. of the 18th day of November, 1918, Charles B. Goodwin, son of the appellee, after leaving his place of employment at Camp Meade, walked to the crossing known as Kelly's Crossing, being a public highway, at which there was a flag station of the railroad company, for the purpose of going to Baltimore by one of the company's cars. This crossing runs approximately north and south, and the two tracks of the company run approximately east and west, the south track being the eastbound track from Camp Meade to Baltimore and the north track being the westbound track. The width of each of these tracks was four *Page 117 
feet eight inches, and of the space between about five feet. The deceased approached these tracks from the north and crossed over both of them either to, or over, the south rail of the eastbound track. He inquired of several people about trains for Baltimore, and was told one would be along in about a minute. He was then at the place where people were accustomed to stand while waiting for trains for Baltimore. For some unexplained reason, almost immediately after getting this information, he retraced his steps, and just before reaching the south rail of the westbound track, he was struck by one of the hand holds on the side of the motor of the westbound train, and died almost instantly.
One witness testified that the train of four or five cars which hit Goodwin was, in her estimation, running at the rate of from twenty-five to thirty miles an hour. There was also testimony tending to show that no signal of the approach of the train was given by whistle or bell, or by the flagman; and the speed of the train and the failure to give proper signals are alleged as the acts of negilgence on the part of the defendant which caused the accident.
There are nine bills of exception, of which eight are to rulings on evidence and one to the ruling on the prayers.
In the view we take of this case it will be necessary to consider only the refusal of the court to grant defendant's third prayer, which asked for an instructed verdict in favor of the defendant on the ground of contributory negligence. This prayer should have been granted. It was demonstrated by photographs that, from the position of safety in which Charles B. Goodwin was before he came in contact with the motor of defendant's train, to the point in the curve in the tracks where a train approaching from the east could first be seen from the position occupied by Goodwin, was at least seven hundred feet. The number of poles appears clearly in the photograph and there was no dispute about the distance between these poles.
It is true, several witnesses gave different estimates of this distance, less than seven hundred feet, but none of them was *Page 118 
willing to swear that it might not have been that far, and all of them admitted that the figures they gave were little more than guesses, without any actual measurement. There was no attempt on the part of plaintiff to show that the photographs did not fairly represent conditions at that place, or that the distance between the poles was less than the measured distance proved by the defendant. Indeed the plaintiff failed absolutely to offer any proof of the distance by actual measurement, notwithstanding the length of time that elapsed between the date of the accident and the time of the last trial and the abundant opportunity to obtain the exact distance. And this, too, after the plaintiff had notice by testimony given at a former trial that defendant's proof showed a greater distance than the estimates given by plaintiff's witnesses.
With such a showing, there could not be room for a difference of opinion among reasonable men that the decedent was guilty of negligence of the grossest kind, and that such negligence directly contributed to the accident. If he used his eyes he must have seen the approaching train in time to avoid danger, and if he listened he must have heard it. If he knew of the approach of the train, and stood near enough to the track to be hit, he was equally guilty of contributory negligence. McNab v. UnitedRailways Co., 94 Md. 724; Glick v. Cumb. W. Elec. Ry. Co.,124 Md. 308; Cullen v. New York, P. N.R.R. Co.,127 Md. 651; Siejak v. United Railways Co., 135 Md. 367; Balto. O.R.R. Co. v. Newton, 137 Md. 21. And many other cases might be cited uniformly to the same effect both here and in other jurisdictions.
But it is sought to distinguish this case from cases like those above cited, on the ground that the relation of Goodwin to the company was that of a passenger. It might well be held that he sustained that relation while he was on the company's property approaching, and standing at, the place provided for passengers to Baltimore. But it would be stretching the technical relation very far to hold that one *Page 119 
who had sustained such a relation merely because of his going to a railway station with the intention of taking a train, continued in that relation after he abandoned such intention or left the station platform just before the arrival of his train, and walked across the tracks where there was no occasion for him to go as apassenger. 10 C.J., p. 612 and sec. 1040b.
If he had been leaving a train within a reasonable time after its arrival and by ways provided by the company for that purpose, the case would be different, as under such circumstances the company must provide safe exit for its passengers, and where it is necessary to cross tracks in approaching or leaving a train, a passenger "may assume that the railroad company will so operate its other trains, or otherwise perform its duty, as not to put him in peril, and he is not under the same obligation to look out for his own safety by looking and listening as is incumbent in general on a person who approaches a railroad track with intent to cross it; and accordingly it has been held that it is not contributory negligence per se for a passenger in passing from the depot to the train, or vice versa, to attempt to cross an intermediate track without first looking and listening for the purpose of ascertaining whether a train is approaching or not; but the question is ordinarily one for the jury to decide under all the facts and circumstances of the case. But this rule doesnot apply when there is no invitation or inducement to cross, as where the car or train is not standing at a place appointed by the carrier for the exit or entrance of passengers, or where the passenger alights from the wrong side of a train * * *." 10C.J. 1112.
Here there was no train discharging passengers, and therefore, no occasion for the company to look out for their safety. See 10C.J. 1109 et seq.; Wash. B. A.R.R. Co. v. State, use ofGoodwin (former appeal), 137 Md. 543; Balto. O.R.R. Co. v.Mahone, 63 Md., at p. 148. As to injury to passengers standing too near to track, see: Pennsylvania R.R. Co. v. Bell, 122 Pa. St. 58; Halbert v. St. Louis and N. *Page 120 E. Ry. Co., 147 Ill. App. 316; Pere Marquette R.R. Co. v.Strange, 171 Ind. 160; St. Louis S.W. Ry. Co. v. Douglas,119 Ark. 33; Holmes v. South. Pacific R.R. Co., 97 Cal. 161;Pendleton v. Richmond, etc. R.R. Co., 104 Va. 813.
There was no evidence of any opportunity of defendant to avoid injury to the deceased after it discovered his peril, and therefore the doctrine of the last clear chance is not applicable. See Wash., B. A.R.R. Co. v. State, supra.
None of the cases cited by appellee is in conflict with the principles herein stated.
Finally, it was strenuously urged that the decision of this court on the former appeal, reported in 137 Md. 543, is conclusive against the contention of appellant on the present appeal.
It is true we went very far in disposing of the case on that appeal, to avoid a decision which would have involved a withdrawal of the case from the jury, in pursuance of the well known rule that the question of contributory negligence should always be submitted to the jury except where there has been some act of negligence committed by the party injured of such a character as to leave no room for difference of opinion among reasonable men as to its quality. In the former record there was a decided conflict of testimony as to the distance at which the approaching train could be seen. The photograph introduced at the last trial, and the uncontradicted evidence in connection therewith, as explained above, have removed any possible doubt as to that question, and really left nothing which could properly have been submitted to the jury.
It follows that the judgment must be reversed.
Judgment reversed without a new trial, with costs toappellant. *Page 121