The equitable plaintiffs are the widow and infant children of John A. Pachmayr, who was killed when a motor truck driven by him was struck by a backward moving engine and tender of the defendant railroad company at a street crossing in Masonville in the suburbs of Baltimore. A verdict for the defendant was directed at the close of the plaintiff's case on the ground of contributory negligence. An exception to that ruling, and two others to the exclusion of certain evidence, raise the questions to be decided on this appeal.
Pachmayr had been an employee of the defendant for eighteen years. At the time of the accident he was a conductor and served also as a yard master. During hours when he was not so employed he supplemented his earnings by *Page 258 
operating a truck for light hauling. He was engaged in that work when he was killed. The truck was being driven southwardly on Mason Street, and the engine and tender were moving westwardly on the single track extending through Masonville. A short distance to the east of the Mason Street crossing were spur tracks and a coal pile. The engine had been shifting cars at that point just before it started towards the place of the collision. The shifting movements were visible over an open area from a parallel thoroughfare, known as Mavin Street, a block distant to the north, along which Pachmayr drove his truck before turning south on Mason Street. There were houses on the east side of that street, north of the railroad, the southernmost being ten or twelve feet from the track. The only eye witness to the accident observed it from his position on Mason Street in front of the fifth house north of Mavin Street, and he testified that about noon he saw Pachmayr as he drove his truck on Mason Street from the Mavin Street intersection towards the railway crossing; that as he approached the track he appeared to "slow up"; that then "all of a sudden," the engine going west "in a backward motion" with "the tender first," hit the truck, carried it twenty or twenty-five feet, and turned it over on its side; that the witness ran to the spot and helped to lift the truck from Pachmayr, who seemed to be dead; that there was no one on the tender or stationed at the crossing, and the witness heard no bell or whistle sounded as the engine approached the scene of the accident. According to other testimony the engine was moving "right fast" towards the crossing, just before the collision, and there was no one on the tender except the engineer, who was on the south side of the engine, "and facing" in that direction.
The trial court admitted, subject to exception, but later excluded on motion, the following printed instructions of the defendant to its trainmen:
 "In the movement of engines with or without cars while switching over highway grade crossings within yard limits, also commercial and station sidings, mine, industrial, or passing sidings; unless there is a crossing *Page 259 
watchman at his post or the gates are down, a member of the crew will protect highway traffic at crossings by preceding each movement over the crossing and see that all highway traffic has been stopped before signaling the engineman to proceed.
 "The same protection will be given whenever a light engine is making a movement either forward or backward over highway crossings at grade, except when running from one station to another as a straightaway movement, also whenever a train or engine takes a siding and obscures the view from the highway of an approaching train."
The Masonville crossing was within "yard limits."
Another rule of the defendant, proffered by the plaintiffs but not admitted, was as follows: "A train will not back over a public crossing or highway, unless there is a trainman on the rear car or one on the ground ahead of such car to see that the crossing is clear."
Several witnesses who for extended periods had served as conductors or brakemen on the portion of the defendant's railroad which passes through Masonville, and which is used only for freight traffic, testified as to the practice of trainmen in regard to the protection of travel on the street crossing over the railroad in that village. The first of those witnesses, a former conductor, when asked what was the customary practice in that respect, said: "I either flagged myself or had one of the men to do it." He said this was done for safety and in accordance with the company's rules. The first of the rules heretofore referred to was cited by the witness as containing such a requirement. The cross-examination of this witness, and of the others testifying on the same subject, proceeded upon the theory that the engine and tender which collided with Pachmayr's truck were not engaged in switching, but were on a straightaway movement from one station to another and therefore the provision of the rule for the protection of highway traffic at crossings was not applicable. There is no proof in the record as to the purpose for which the engine, "running light," was moving westwardly when *Page 260 
the collision occurred. About 400 feet to the west of the crossing was a "hump," where trains were "broken up" on a system of switches connecting with the main track. The coal pile switch, where the engine had just been shifting cars, was only "half a block," or from "sixty to seventy-five feet," to the east of the crossing, as two of the witnesses respectively estimated. The engine may have been on its way to the hump for the purpose of transferring cars to the coal pile. There is nothing in the testimony to indicate that the passage of an engine and tender from one of those switching points to the other, covering a distance of approximately 500 feet, would be regarded by trainmen as a station to station movement within the meaning of the rule by which they are governed. But the witness stated that there was no variation in his practice of flagging the crossing, regardless of the purpose or destination of the train or engine movement, and he testified that he had often seen other train crews observe that precaution.
Another witness, a former brakeman, said that he always flagged the crossing when switching over it, but not when bringing up a train of cars. A railroad man, not employed by the defendant, but living in Masonville at the time of Pachmayr's death and familiar with the operation of engines and trains over the Mason Street crossing, testified that they were generally flagged when going east, but when a train was moving westwardly towards the crossing the engineer would blow for a signal to be given from the hump that the way was clear, and that the signalman at that point could see the crossing and observe whether traffic on the highway would be endangered by the passage of the train.
A resident of Masonville, whose home is near the railroad track and who had lived in the neighborhood for many years, testified that it was the custom to flag trains at the Mason Street crossing. The following quotation is from his testimony: "Q. * * * When a man flags a crossing what is done? What happens to the train? A. It stops. Q. And then what happens? A. A man gets off the engine. Q. And where does he walk? A. To the crossing. Q. And when he *Page 261 
gets to the crossing what does he do? A. Stands there and sees that the traffic is all right and if all right he will give the engineer a signal to proceed. Q. Have you ever seen John Pachmayr come across the crossing in charge of a crew? A. Yes, sir. Q. What was his job on the railroad? A. He was a brakeman and promoted to conductor. Q. And was a freight conductor at the time he was killed? A. Yes, sir. Q. And you have seen him come across that crossing? A. I have; yes, sir. * * * Q. What did you observe him do at the times you remember? A. I have seen Pachmayr flag the crossing. If he didn't one of the crew did."
The following is part of the cross-examination of the same witness: "Q. And don't you know that the flagging is confined to the switching of the cars? A. Well, they are supposed to be flagged all the time, I suppose. Q. At the former trial didn't you say sometimes it was flagged and sometimes not? A. Yes, sir. Q. That is true, isn't it? Sometimes the crossing is flagged and sometimes not? A. As a general rule it is flagged."
There can be no question as to the legal sufficiency of the evidence to prove primary negligence in this case. It was obviously negligent to run the engine and tender backward over the street crossing, in the manner indicated by the testimony, without any warning by bell or whistle of its approach, with the engineer facing another way and with no precaution against the danger of injury to travelers on the public highway. The existence of primary negligence was assumed by the instruction which directed a verdict for the defendant upon the theory that Pachmayr was conclusively shown by the evidence to have contributed to his fatal injuries by a failure to exercise due care. In determining whether the proof in the case requires and justifies the adoption of that theory, there are exceptional circumstances to be considered. As a trainman serving on that section of the railway, Pachmayr was well informed as to the special incidents of the freight operations to which it was exclusively devoted. The question as to whether he acted imprudently must be decided with proper regard to that knowledge. If the evidence *Page 262 
admits of a rational inference that engines approaching the Mason Street crossing were customarily stopped before proceeding over it, and a flagman posted for the protection of travel on the street, it would also be inferable that Pachmayr may have relied upon that custom and the belief that the engine would not continue over the crossing without the observance of the usual precaution. When "he slowed up before he got to the crossing," as one of the witnesses testified, it is a just inference that he did so for the purpose of looking for possible danger from the passage of trains or engines on the railroad. The engine which collided with his truck must have been visible to him after he reached a point ten or twelve feet from the track, and, if he had no adequate reason to suppose that its progress would be arrested before it passed the crossing, his attempt to drive on would have to be regarded as imprudent. But the proof admits of a reasonable inference that it was the customary practice, which Pachmayr himself had followed as a conductor, to flag the crossing for such engine movements as the one by which he was killed. Even if the practice were clearly proved to be confined to switching operations, the jury might infer that the engine, which had been shifting cars at the coal pile switch, sixty or seventy-five feet from the crossing, as Pachmayr probably observed while driving along the parallel highway, with a wide area of open ground between, was still being used for that kind of service. The testimony indicates that the crossing was at times within the scope of switching movements.
Before the victim of the accident can be judicially declared to have been guilty of contributory negligence, we must give due consideration not only to all inferences of fact tending to support the opposite view, but also to the important presumption that he exercised ordinary care for his own safety. Lozzi v.Pennsylvania R. Co., 152 Md. 508; Hopper, McGaw Co. v.Kelly, 145 Md. 170; Burke v. Baltimore, 127 Md. 561; Balto. O.R. Co. v. Stumpf, 97 Md. 91. It does not appear that he drove on the track without looking for dangers which might be imminent, and that he thus acted in heedless *Page 263 
and complete reliance upon the assumption that the practice of posting flagmen for passing trains or locomotives would in no instance fail to be pursued. The inquiry is whether, in view of the inferable facts that he looked for trains on the railway, and saw the backward moving engine, but was induced by the absence of a flagman from the crossing to believe that the engine would not back over it before stopping in order that one should be posted, the conduct of Pachmayr in proceeding on his way must be conclusively adjudged to have been negligent. Unless it was so manifestly negligent under the circumstances that rational minds would not differ as to its imprudence, the issue should have been left to the jury for decision. Chesapeake Pot. Tel. Co. v.Merriken, 147 Md. 577; Merrifield v. Hoffberger, 147 Md. 137;Taxicab Co. v. Emanuel, 125 Md. 259; Askin v. Moulton,149 Md. 140, This case is an appropriate one for the application of the principle that, while a traveller on a highway is not relieved of the duty of exercising care at a railroad crossing because the danger signals usually employed there, to his knowledge, are not at the time displayed, yet the implied assurance of safety from the absence of the customary warning is a circumstance materially affecting the question whether the proper degree of care was exercised. This was a decisive consideration in favor of the submission of such an issue to the jury in Balto. O.R. Co. v. Stumpf, supra, and Balto. O.R.Co. v. Windsor, 146 Md. 429. In the first of those cases, a quotation by the court from the opinion in Wilson v. N.Y. N.H.R. Co., 18 R.I. 491, included the statement "that open gates, or the absence of the usual signals of an approaching train or engine are implied assurances that no train or engine is approaching the crossing with intent to cross the street, upon which travellers on the street have a right to rely, and that if a traveller on the street be injured while crossing the railroad in such circumstances, the question whether he was guilty of contributory negligence is for the jury."
In the present case, when all of its special circumstances are considered, we are unable to agree with the view that *Page 264 
contributory negligence is so conclusively proved as to make the issue one of law for the court to decide, but in our opinion it was a question of fact which should have been submitted to the jury for determination.
The excluded rules of the defendant were admissible as supplementing and supporting the testimony as to the flagging system upon which Pachmayr is supposed to have relied. The proffered rule that a train shall not back over "a public crossing or highway unless there is a trainman on the rear car or one on the ground ahead of such car to see that the crossing is clear," is not irrelevant on the theory, suggested in argument, that it is applicable only to a returning backward movement over a crossing which the train has just passed in forward motion. The purpose of the rule was to protect travel on the highways, and consistently with that object it should be construed as applying to any backing of a train over a public crossing, without regard to its previous movements.
Judgment reversed with costs, and new trial awarded.