BALTIMORE TRANSIT COMPANY *v.* STATE, USE OF CASTRANDA, ET AL.

[No. 74, October Term, 1949.]

422

426

428

429

*Decided February 9, 1950.*

430

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Wallis Giffen,* with whom were *Philip S. Ball* and *Walter V. Harrison* on the brief, for the appellant.

*Paul Berman* and *Sigmund Levin,* with whom were *Paul B. Mules, George B. Woelfel* and *Theodore B. Berman* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Joseph E. Castranda, age 37, of Baltimore, was killed on Annapolis Road in Baltimore on the night of December 16, 1946, when he was struck by a streetcar operated by the Baltimore Transit Company. This action to recover damages for his death was brought by the State of Maryland for the use of his widow and four surviving children.

The accident occurred about 10:15 p.m. at the intersection of Annapolis Avenue, which runs eastwardly into Annapolis Road. Shortly before the accident Castranda parked his automobile in front of the public library on the east side of Annapolis Road and walked across the street with Franklin C. Elliott to a tavern on the southwest corner of the intersection. On returning from the tavern, the two men walked to the north sidewalk of Annapolis Avenue and then started toward the east side of Annapolis Road. According to Elliott, the traffic light was green when they stepped off the curb. He testified that he walked hurriedly across, but Castranda lagged behind presumably because someone had called him and he turned to speak.

Defendant's streetcar was traveling north on Annapolis Road. James Jarvis, the motorman, testified that when he reached Waterview Avenue, which runs west-

wardly into Annapolis Road, the traffic light, which is about 100 feet south of the traffic light on the south side of Annapolis Avenue, was red. He saw a tractor-trailer coming on Waterview Avenue, and as soon as the light was green, he started to speed up to get ahead of the tractor-trailer. Though Annapolis Road was well lighted and he had a clear view, he did not see Castranda until he stepped on the southbound track about 35 feet away. The motorman said he did not reduce his speed, as he supposed Castranda was waiting for the car to pass. He continued to watch the tractor-trailer, and when he looked to the front again Castranda was stepping on the northbound track only about 7 feet away. Castranda looked up, then jumped or fell. The motorman applied the emergency brake, but it was too late. There was a thud, and the victim was found lying on his stomach in the street near the center door of the car and near the rear of the tractor-trailer, which had stopped about four feet east of the car.

Officer Shanahan, of the Baltimore City Police Department, who was sitting in a police car on the west side of Annapolis Road waiting for another policeman to come out of the store on the northwest corner, saw the two men on the southwest corner, and later saw Castranda walking in the street. Immediately after the accident Officer Shanahan asked the motorman: "Didn't you see that man standing in the street there?" The motorman replied: "No, sir, I didn't." One of the passengers on the car also heard the motorman say: "I did not see the man. I only saw the track." At the trial of the case the motorman did not deny that he had made these statements. When asked whether he had told Officer Shanahan that he did not see the man, he answered: "That I couldn't say. I may have said anything at the time. I was upset."

After the trial of this case in the Baltimore City Court in December, 1948, the jury rendered a verdict in favor of plaintiff for $50,000. The trial judge, however, granted a new trial on the issue of amount of damages.

The case was then removed to the Superior Court of Baltimore City for trial of that issue. On May 17, 1949, the jury in that Court awarded plaintiff the sum of $30,000, apportioned as follows: to Dorothy E. Castranda, widow, $9,000; to Edward Castranda, $3,500; to Dorothy Lee Wheeler, $1,000; to Robert Castranda, $7,500; to Anthony Castranda, $9,000. From the judgment entered on that verdict defendant took this appeal.

*First.* Defendant contended that there was no evidence of negligence legally sufficient to warrant submission of the case to the jury. It is, of course, the duty of the motorman of a streetcar to keep a lookout, signal its approach when such a warning is reasonably necessary, move at moderate speed, and stop when a necessity for stopping becomes apparent. *Baltimore Transit Co. v. Alexander*, 172 Md. 454, 462, 192 A. 349. Moreover, the right of way at a street intersection controlled by a traffic signal belongs to that vehicle or pedestrian whose course is favored by the signal subject to the rights of those already in the intersection. *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, 29, 190 A. 768. The Maryland Motor Vehicle Act of 1943, which revised the motor vehicle laws of the State, expressly provides that whenever traffic is controlled by traffic-control signals exhibiting different colored lights successively one at a time, pedestrians facing the signal when the light is green may proceed across the roadway within any marked or unmarked crosswalk, and all vehicles shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time such light is exhibited. Laws of 1943, ch. 1007, Code Supp. 1947, art. 66½, sec. 141.

Elliott, Castranda's companion, testified that he and Castranda, after reaching the north sidewalk of Annapolis Avenue, started across Annapolis Road "right up at the corner" when the light was green. Thus, if that was true, they had the right to continue across the street, although the light changed while they were in the street. There were no lines on the street to mark the crosswalk for pedestrians at this intersection. But

under the statutory definition, a crosswalk may be either any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface or that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections. Code Supp. 1947, art. 66½, sec. 2(a) (9).

We find no reason to say that the testimony that Castranda was using the crosswalk was incredible. Defendant called attention to the statement of Officer Charles Riess, of the Accident Investigation Bureau, at the inquest that Castranda's body was lying about 40 or 50 feet north of the intersection. However, Officer Riess testified at the trial that the streetcar stopped "a length past Annapolis Avenue." If the rear end of the streetcar, which was about 40 feet long, was on a line with the curb line of Annapolis Avenue, and if Castranda was lying near the center door, he must have been about 20 feet north of an extension of the curb line, and therefore probably not more than about 15 feet north of an extension of the building line. Hence, if he had been hurled 15 feet, he could have been in the crosswalk when he was hit.

Defendant urged that the testimony of the police officer was worthless because it was not consistent with his statement at the inquest. It is axiomatic that when a witness says in one breath that a thing is so, and in the next breath that it is not so, his testimony is too inconclusive, contradictory and uncertain to form the basis of a legal conclusion. *Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244; *Lusk v. Lambert*, 163 Md. 335, 339, 163 A. 188. This axiom, however, applies to conflicting testimony given by the witness at the trial, and not to conflicting testimony given at some other trial, since it is the province of the jury to determine the credibility of witnesses, and the solution of the conflict and the weight of the evidence are questions for the jury and not for the court. *Foble v. Knefely*, 176 Md. 474, 484, 6 A. 2d 48, 122 A. L. R. 831.

It is undeniable that the motorman should have kept a careful lookout for pedestrians at Annapolis Avenue. He admitted that he knew from his experience as motorman on this line that "pedestrians cross anywhere along there." Yet he admitted that as soon as the traffic light at Waterview Avenue was green, he started the car with full power and increased his speed to 20 miles an hour, and did not slow down until he was within 7 feet of Castranda. We think there was evidence from which the jury might reasonably find (1) that the motorman was operating the car at an excessive speed that directly contributed to the accident, and (2) that he did not keep a proper lookout for pedestrians.

Likewise, the Court cannot rule as matter of law that Castranda was guilty of contributory negligence. The question of contributory negligence must be considered in the light of all the inferences favorable to the plaintiff's case that may be fairly deduced from the evidence. Where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury. In order that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds. *Lozzi v. Pennsylvania R. Co.*, 152 Md. 508, 510, 137 A. 293; *Jones v. Wayman*, 169 Md. 670, 675, 182 A. 417; *Beck v. Baltimore Transit Co.*, 190 Md. 506, 511-512, 58 A. 2d 909, 911; *Bush v. Mohrlein*, 191 Md. 418, 62 A. 2d 301. In addition, before a person killed in an accident can be declared to have been guilty of contributory negligence as matter of law, the trial court must give consideration to the presumption that he exercised ordinary care for his own safety in accordance with the natural instinct of human beings to guard against danger. State, to Use of *Pachmayr v. Baltimore & Ohio R. Co.*, 157 Md. 256, 262, 145 A. 611; *Sheriff Motor Co. v. State*, to Use of Parker, 169 Md. 79, 84, 179 A. 508;

*Davidson Transfer & Storage Co. v. Baltimore Transit Co.*, 183 Md. 263, 273, 37 A. 2d 326.

In the case at bar it appeared that Castranda did not walk as rapidly as Elliott and stopped in the street after the light changed. Nevertheless, if the light was green when he started across the street, he had the right of way. Moreover, since he was endangered by northbound and southbound traffic on Annapolis Road and by vehicles coming from Waterview Avenue and Annapolis Avenue, it may reasonably be presumed that he was bewildered by the streetcar and tractor-trailer coming rapidly toward him and stopped momentarily in the center of the street to keep from being struck. In view of these conditions on a heavily traveled thoroughfare, where there is a complicated system of automatic traffic signals, the Court cannot hold that negligence on the part of the pedestrian was conclusively proved.

*Second.* Defendant objected because the trial judge refused to instruct the jury that it was the duty of the pedestrian to look and listen for approaching traffic before attempting to cross the road; and if the jury finds that if he had looked or listened he would have known of the approach of the streetcar, and if the jury further finds that he did not take these precautions, then he was guilty of contributory negligence and the verdict must be for defendant. The judge properly refused to give that instruction, because it ignored the testimony that Castranda was crossing the street in the crosswalk and that the light was green when he started across. *Caryl v. Baltimore Transit Co.*, 190 Md. 162, 58 A. 2d 239.

*Third.* Defendant objected to the instruction that if the jury finds that the motorman's attention was diverted by the tractor-trailer coming up Waterview Avenue, so that he was looking at that and not looking for people in front of him, the jury can find, if they feel that way, that it was negligence on his part to continue without looking. We find no error in this instruction. The motorman admitted that he had centered his attention on the tractor-trailer and was trying to prevent it from getting ahead of him. Officer Riess testified that the

motorman told him that he did not see anyone on the track because he "was watching the truck pulling out of Waterview Avenue and ringing his bell at the same time, because he thought the truck might pull across in front of him."

*Fourth.* Defendant objected to the instruction that, in considering the damages sustained by the daughter, Dorothy Lee Wheeler, the fact that she was married on August 10, 1948, is a factor to be considered as reducing her damages, because the father would be under no legal obligation to support her after her marriage; but the jury may also consider that if it were not for her father's death she might have continued going to school and might not have married for several years, if the jury so find.

The Maryland statute under which this action was brought, Laws of 1852, ch. 299, Code 1939, art. 67, secs. 1, 3, was patterned after Lord Campbell's Act, 9 and 10 Vict., ch. 93. Every action under this statute shall be brought by the State of Maryland for the benefit of the wife, husband, parent and child of the person killed. In such an action the jury may give such damages as they may think proportioned to the injury arising from such death to the parties for whose benefit the action is brought, and the amount recovered shall be divided among the parties in such shares as the jury shall direct by their verdict. The statute makes no mention of age or condition of the equitable plaintiffs. Section 3 provides that the jury may give "such damages as they may think proportioned to the injury."

This Court has held that in any action brought under the statute for death caused by negligence, the jury may award damages for pecuniary losses which have already been sustained by the equitable plaintiffs and for pecuniary losses which they may probably suffer in the future as the result of the death. No damages shall be awarded as a solace for the grief or mental suffering of relatives of the deceased. *Baltimore & Ohio R. Co. v. State,* to Use of Mahone, 63 Md. 135, 146; *United Railways & Electric Co. of Baltimore v. State, to Use of*

*Mantik*, 127 Md. 197, 205; 96 A. 261. In the case of the children of a person killed by negligence, the jury may estimate the prospective damages up to the time of their marriage or majority. The children may recover for the loss of the comforts, education, and position in society which they would have enjoyed if their father had lived and retained his income and they had continued to form part of his family. *Baltimore & Ohio R. Co. v. State, to Use of Hauer*, 60 Md. 449, 467.

It is quite apparent that the challenged instruction did not operate to the prejudice of defendant, because the daughter was awarded only $1,000, while the other children were awarded amounts ranging from $3,500 to $9,000. Under these circumstances there was no prejudicial error in the instruction, although we do not approve it.

*Fifth.* Defendant objected to the instruction that the jury, in considering the damages sustained by the widow, are not to take into consideration the fact that after her husband's death she was engaged to be married and obtained a marriage license, because remarriage of a widow neither bars nor mitigates her pecuniary loss arising out of the death of her husband. We find no reversible error in this instruction. It is conceded that Mrs. Castranda did apply for a marriage license, but she did not marry. In awarding damages sustained by a widow for the death of her husband caused by negligence, the jury in estimating her prospective damages, should take into consideration the probable duration of the joint lives of herself and her husband if he had not been killed. *Baltimore & Reisterstown Turnpike Road v. State, to Use of Grimes*, 71 Md. 573, 583, 18 A. 884; *Zink v. State, for Use of Renstrom*, 132 Md. 670, 104 A. 264. This Court has definitely held that the trial judge should not instruct the jury that they may speculate on when the widow will marry again and allow her damages only up to that time. *Baltimore & Ohio R. Co. v. State, to Use of Trainor*, 33 Md. 542, 554.

*Sixth.* Defendant objected to the admission in evidence of Baltimore City Ordinance 592 of 1920-1921, which

provides as follows: "When approaching and crossing any intersecting public highway or private street, the person operating a street car must have the same under control and must regulate the speed of said car according to what is reasonable and proper in view of the circumstances, surroundings and location; provided, however, that in crossing any such street or intersecting public highway or private street in the thickly congested or business parts of the city, such street car shall not be operated at a rate of speed exceeding fifteen miles an hour." Baltimore City Code, 1927 Ed., art. 39, sec. 69.

Under our present rules relating to appeals, it is ordinarily not necessary to state the grounds for an objection, unless requested by the trial court. Rules of the Court of Appeals, rule 17. In the instant case the trial judge asked defendant to state the grounds for objection to the introduction of the ordinance, and the only ground assigned was that the ordinance had been superseded by the Motor Vehicle Act. The term "motor vehicle," as defined by the Motor Vehicle Act, includes every vehicle which is self-propelled except vehicles operated exclusively upon rails or propelled by electric power obtained from overhead wires, but not operated upon rails or tracks. Code Supp. 1947, art. 66½, sec. 2(a) (26). The judge, finding no basis for the contention that the ordinance had been superseded, overruled the objection. Defendant now contends that the ordinance was inadmissible because of the fact that the place where the accident occurred was not in a thickly congested or business part of Baltimore. Plaintiff, in reply, emphasizes that six automatic traffic lights are installed for the control of traffic on Annapolis Road at the intersections of Waterview Avenue and Annapolis Avenue. In any event, at least a part of the ordinance would be applicable. *Crawford v. Baltimore Transit Co.*, 190 Md. 381, 58 A. 2d 680; *Gross v. Baltimore Transit Co.*, 192 Md. 278, 64 A. 2d 147.

*Seventh.* Defendant contended that, when it called its investigator to the stand to impeach Elliott, the judge erred in not allowing it to ask him: "What did Elliott

tell you about the accident?" It is an invariable rule that in order to impeach a witness by proof of prior contradictory statements, a foundation for such impeachment must be laid by asking the witness on cross-examination whether he had made contradictory statements to a designated person and informing him of the place where and the time when the statements were supposed to have been made. *Baltimore & Ohio R. Co. v. State, to Use of Welch*, 114 Md. 536, 544, 80 A. 170; *Conrades v. Heller*, 119 Md. 448, 451, 87 A. 28; *Pindell v. Rubenstein*, 139 Md. 567, 574, 115 A. 859. "This," Judge Robinson said in *Brown v. State*, 72 Md. 468, 475, 20 A. 186, 188, "is but fair and just to the witness, in order that he may be enabled to refresh his recollection in regard to such statements, and afforded the opportunity of making such explanations as he may deem necessary and proper." If the witness denies that he made the alleged statements, he may then be contradicted by any witness who heard him make them, and the jury will then determine what value to give to his testimony.

In the case before us defendant failed to lay the necessary foundation to impeach Elliott. The question addressed to the investigator as an impeaching witness did not relate to any specific statement sought to be contradicted. In addition, no proffer was made to inform the Court what the investigator would testify to, and it does not appear that defendant sustained any prejudice by the exclusion of the question. In the interest of the orderly administration of justice and to avoid useless expense to litigants, it is the policy of this Court not to reverse for harmless error, and the burden is on the appellant in all cases to show prejudice as well as error. *Hipple v. Mason*, 147 Md. 94, 102, 127 A. 383; *Johnson & Higgins v. Simpson*, 163 Md. 574, 588, 163 A. 832.

*Eighth.* Defendant complained because the judge would not permit its investigator to impeach Elliott by telling whether Elliott had said anything to him about being requested by Castranda to go to Snyder's Bar "to tow an automobile back." Such a conversation was irrelevant

to the issues of the case and hence it was properly excluded. It is an accepted rule that a witness cannot be cross-examined as to any irrelevant fact for the purpose of impeaching him by other evidence. If the witness should answer an irrelevant question without objection, evidence cannot afterwards be admitted to contradict his testimony on the collateral matter. *Sloan v. Edwards,* 61 Md. 89, 105; *Baltimore City Passenger Ry. Co. v. Tanner,* 90 Md. 315, 320, 45 A. 188.

*Ninth.* Defendant contended that the Superior Court erred in allowing Mrs. Castranda to state (1) why she and her husband entered the tavern business in 1944, (2) how much they sold the tavern for in 1945, and (3) in whose name the money was deposited in bank. It was urged that this testimony was irrelevant. In an action brought under Article 67 of the Code, the trial court has broad discretion in admitting evidence as to the earnings of the deceased and the use made of them. It was shown in the Court below that Castranda had been a prize fighter in his youth, retiring from pugilism after his marriage in 1930. For about fifteen years he dealt in second-hand automobiles. We find no prejudice in the admission of testimony relating to a business conducted by Castranda in addition to his usual employment. Moreover, the judge fully instructed the jury concerning the various factors to be taken into consideration in determining the amount of damages. Where the jury are fully and explicitly instructed as to the measure of damages and the principles upon which the damages are to be assessed, the admission in evidence of facts not material to any question to be passed upon by the jury, the consideration of which is excluded by the instructions, affords no sufficient ground for a reversal of the judgment. *Baltimore & Ohio R. Co. v. State, for Use of Hauer,* 60 Md. 449, 459.

As we have found no reversible error in the rulings of either the Baltimore City or the Superior Court, the judgment entered in favor of plaintiff will be affirmed.

*Judgment affirmed, with costs.*