**Betty Jane DRISCOLL (Cain), widow of Ellison C. Driscoll, Jr., Administratrix of the Estate of Ellison C. Driscoll, Jr., and next friend of Kerry E. Driscoll, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 75–146, 76–277.**

United States District Court, D. Delaware.

June 21, 1978.

See also, D.C., 456 F.Supp. 121 and 456 F.Supp. 127.

F. Alton Tybout, and John A. Elzufon, of Tybout & Redfearn, P. A., and Kenneth W. Lewis, of Daley & Lewis, Wilmington, Del., for plaintiff Betty Jane Driscoll (Cain).

James W. Garvin, Jr., U. S. Atty. for the District of Delaware, by Kent W. Walker and John X. Denney, Jr., Asst. U. S. Attys., Wilmington, Del., for defendant United States of America.

## OPINION with FINDINGS OF FACT and CONCLUSIONS OF LAW

LAYTON, Senior District Judge.

This case is one-third of a consolidated action arising out of the May 16, 1974, crash of a Piper Cherokee airplane at the Wicomico County Airport near Salisbury, Maryland. Just as the plane left the ground upon take-off, it was struck in the rear by a jeep that was owned by the United States and driven by a Government employee. Before the pilot was able to land the plane safely, it plunged to the runway and both of its crew members were killed. One of the men who died in the crash was Ellison C. Driscoll, Jr., a flying instructor who was supervising the instrument flight training of the other crew member when the accident occurred.

Betty Jane Cain, the widow of Ellison C. Driscoll, Jr., and the administratrix of his estate, brought this wrongful death and survival action against the United States under the Federal Tort Claims Act. This action subsequently was consolidated with a similar wrongful death and survival action brought by the other crew member's widow, and with an action brought by the owner of the Piper Cherokee plane that was destroyed in the May 16, 1974, crash.

Trial of these consolidated actions was bifurcated. The liability phase was tried to this Court on July 25–27, 1977. Sitting without a jury, this Court held that the Government was liable in damages to all of the plaintiffs. *Atlantic Aviation Corp. v. United States*, C.A. No. 75–146 (Consolidated) (D.Del., Oct. 27, 1977) (unpublished memorandum opinion).

On January 31, and February 1–2, 1978, a trial was conducted as to damages. Extensive post-trial briefing has been completed and this case is in a posture for final disposition. I will treat each action separately and will make the appropriate findings of fact and conclusions of law in the cases individually.[1] In addition, I will rule upon certain evidential questions which were reserved at trial for a decision at this time.

## DRISCOLL (CAIN) v. UNITED STATES

The plaintiff, Betty Jane (Driscoll) Cain, brought suit in three capacities. In her individual capacity, as the widow of Ellison C. Driscoll, Jr., her claim is for damages attributable to the wrongful death of her husband, including her pecuniary loss resulting from his death and her emotional suffering, loss of consortium, and other non-pecuniary losses cognizable under applicable Maryland law. As the Administratrix of the Estate of Ellison C. Driscoll, Jr., Mrs. Cain's claim is for damages for the emotional stress, and pain and suffering endured by the decedent between the time of the tort—the collision of the jeep and the plane—and the time of the crash. In her capacity as administratrix, Mrs. Cain also seeks to recover her husband's funeral expenses. Finally, as next friend of Kerry E. Driscoll, the daughter of Ellison C. Driscoll, Jr., Mrs.

---

1. The legal issues presented in this case are virtually identical to those raised in its companion case, *D'Angelo v. United States*, D.C., 456 F.Supp. 127, C.A. No. 75–146 (Consolidated) (C.A. No. 77–171).

The discussion of the applicable law that is contained in this Court's opinion in *D'Angelo*, also filed on this date, is incorporated herein and forms the basis for the conclusions of law made in this case.

Cain asks for damages for the pecuniary loss sustained by the minor child as a result of the death of her father.

### Evidential Rulings

Before discussing my findings of fact and conclusions of law, I will address several evidential questions which I reserved at trial for rulings at this time.

Plaintiff objected, on the ground of relevancy, to the Government's cross-examination of Mrs. Cain about her receipt of proceeds from life insurance policies whose premiums were paid by Atlantic Aviation Corp., Driscoll's employer.

■ Under Maryland's "collateral source" rule, such insurance benefits received by the plaintiff cannot be considered in calculating her damages where the payments came from sources wholly unconnected with the defendant. *Jennings v. United States*, 291 F.2d 880, 887–88 (4th Cir. 1961); *Cincotta v. United States*, 362 F.Supp. 386, 409 (D.Md.1973); *Plank v. Summers*, 203 Md. 552, 102 A.2d 262 (Ct.App.1954). Since the Government did not pay the premiums on the life insurance policies from which Mrs. Cain received death benefits, that she received such proceeds is irrelevant to this Court's determination of her recovery. Thus, the Government's cross-examination on this point was improper.

In determining the amount of monetary damages recoverable by the plaintiff, this Court will not take into account her testimony concerning her receipt of life insurance proceeds upon the death of Ellison C. Driscoll, Jr.

The Government objected to the testimony of Arthur W. Gorman concerning the employment histories, specifically the promotion histories, of several employees of Atlantic Aviation.

Mr. Gorman's testimony was offered to demonstrate that, over a specified number of years, a pilot for Atlantic Aviation would be promoted routinely through a progression of higher-paying jobs. The Government argued that evidence of such future promotions is speculative under Maryland law.

■ In an action for wrongful death under Maryland law, evidence of future promotions is relevant in determining the lost future earnings of a decedent. *Maryland ex rel. Pryor v. Miller*, 180 F. 796, 810 (D.Md.1910), *modified on other grounds*, 194 F. 775 (4th Cir. 1911), *cert. denied*, 225 U.S. 703, 32 S.Ct. 836, 56 L.Ed. 1265 (1912); *Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804, 819 (Ct.Spec.App.1972), *rev'd on other grounds*, 267 Md. 559, 298 A.2d 391 (Ct.App.1973) (affirming appellate court's opinion as to calculation of damages). Such evidence is not speculative where the future promotions would have been automatic with the passage of time. *Sun Cab Co. v. Walston, supra*, 289 A.2d at 819.

Whether the evidence of a routine progression of advancement at Atlantic Aviation is sufficient to justify a finding that the decedent would have been promoted is a question for this Court to decide. The testimony of Mr. Gorman on this point is relevant to this Court's resolution of that question and is, therefore, admissible.

The Government's objection to the testimony of Arthur Gorman concerning the routine course of advancement for pilots employed by Atlantic Aviation will be overruled.

Plaintiff's exhibits PDR 1–14, the promotion records of several Atlantic Aviation pilots, were admitted subject to the Government's continuing objection that such evidence was speculative under Maryland law.

Since I have ruled that this evidence is not speculative with respect to the future promotion possibilities of Driscoll, the Government's continuing objection on this point will be overruled and plaintiff's exhibits PDR 1 through 14 will be admitted unconditionally.

Margaret J. Michaels was called as a witness on behalf of the plaintiff to testify about the Driscolls' family plans. The defendant objected to her testimony as hearsay and moved to strike her testimony following the completion of direct examination.

Mrs. Michaels was a friend of Mrs. Driscoll (Cain). She testified that in the spring of 1974, Mrs. Driscoll frequently had spoken to her of plans to have a second child.

■ This Court does not perceive the relevance of Mrs. Michaels' testimony to any issue of significance in this case. Furthermore, her testimony about the Driscolls' family plans clearly was hearsay under Fed. R.Ev. 802. Nevertheless, since this testimony was offered to establish Mrs. Driscoll's then-present state of mind, i. e., her plans, it arguably was admissible under Fed.R.Ev. 803(3).

The Government's motion to strike the testimony of Mrs. Michaels will be denied. However, this Court will accord little, if any, significance to her testimony and it will not form the basis for a finding of fact.

The plaintiff's expert economist, Dr. Francis X. Tannian, computed the present discounted value of the plaintiff's pecuniary loss attributable to the death of Ellison C. Driscoll, Jr. The documentary reflections of his calculations were offered in evidence as plaintiff's exhibits PDR 19 through 23. The defendant objected to the admission of these exhibits, contending that Dr. Tannian's computations were speculative in that they allegedly were based upon evidence not in the record.

■ The Government's objection is without basis. Dr. Tannian computed the present value of the pecuniary losses suffered by the widow and minor child of Ellison C. Driscoll, Jr., as a result of his death. In formulating his computations, Dr. Tannian took into consideration several factors: the age and health of the decedent and the plaintiff; the decedent's annual income at the time of his death; the promotion possibilities of the decedent; the patterns of income expenditure of the Driscolls; and the age of the decedent's minor child. There was testimony or documentary evidence on each of these points suffi-

cient to permit Dr. Tannian to state his expert opinion of the present value of the plaintiff's pecuniary losses.

The Government's objection to the admission of plaintiff's exhibits PDR 19 through 23 will be overruled and these exhibits will be admitted.

Having disposed of all of the evidential questions which were reserved at trial, I will proceed to my findings of fact and conclusions of law with respect to the Driscoll plaintiffs.[2]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ Ellison C. Driscoll, Jr., was killed in the May 16, 1974, plane crash at the Wicomico County Airport near Salisbury, Maryland. The negligent conduct of a Government employee, the jeep driver who rammed the Piper Cherokee plane as it was taking off, acting within the scope of his employment, caused the death of Ellison C. Driscoll, Jr. As fully discussed in the previous opinion of this Court on the question of liability in this case, I have concluded that the Government is liable in damages to the Driscoll plaintiffs for the losses they sustained as a result of the death of Ellison C. Driscoll, Jr. *Atlantic Aviation Corp. v. United States*, C.A. No. 75–146 (Consolidated) (D.Del., Oct. 27, 1977) (unpublished memorandum opinion). Since the accident that caused his death occurred in Maryland, the law of that state is applicable in determining the nature and extent of the Government's liability to the Driscoll plaintiffs. 28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1, 6–10, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

The Driscoll suit comprises two claims: a wrongful death action brought by the widow of Ellison C. Driscoll, Jr., in her individual capacity and on behalf of his minor child, and a survival action brought by Betty Jane (Driscoll) Cain as the administratrix of his estate.

---

2. As previously stated, the legal issues presented in this case are virtually identical to those raised in the companion case, *D'Angelo v. United States*, D.C., 456 F.Supp. 127, C.A. No. 75–146 (Consolidated) (C.A. No. 77–171). The

discussion of the applicable law that is contained in this Court's opinion in *D'Angelo*, filed on this date, is incorporated herein and forms the basis of the conclusions of law made in this case.

## Wrongful Death

In their wrongful death action against the United States for the death of Ellison C. Driscoll, Jr., the Driscoll plaintiffs seek approximately $483,899.00 for their pecuniary losses resulting from his death, and approximately $75,000 in solatium for the widow's non-pecuniary loss (mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, and guidance).

## Pecuniary Loss

■ Under Maryland law, the Driscoll plaintiffs are entitled to recover the present value of the pecuniary benefit which they reasonably might have expected to receive from Ellison C. Driscoll, Jr., had he not been killed. *United States v. Guyer*, 218 F.2d 266, 268 (4th Cir. 1954); *Cincotta v. United States*, 362 F.Supp. 386, 407 (D.Md. 1973); *Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804, 809–13 (Ct.Spec.App. 1972), *rev'd on other grounds*, 267 Md. 559, 571–74, 298 A.2d 391, 397–400 (Ct.App.1973) (affirming appellate court's opinion as to calculation of wrongful death damages). In calculating the pecuniary losses of the Driscoll plaintiffs resulting from the death of Ellison C. Driscoll, Jr., this Court must determine the amount of future income that the decedent would have earned had he not been killed, deduct from that amount a portion attributable to the decedent's personal consumption, reduce the remainder to its present worth, and apportion the final sum between Mrs. Cain and Kerry E. Driscoll.

Lost Future Income:

Ellison C. Driscoll, Jr., was a white male born on October 9, 1945, and was 28 years of age at the time of his death. As of May 16, 1974, his work-life expectancy was approximately 34 years, or to age 62. Prior to his death, Driscoll's health was excellent and there is no evidence to suggest that he would not have completed his normal working life had he not been killed.

At the time of his death, Driscoll was the Chief Flight Instructor for Atlantic Aviation Corporation and was earning a salary at an annual rate of $11,399.96. It is from this starting point that a reasonable projection of Driscoll's lost future income will be made.

In view of his good health, his piloting experience, and his position of responsibility at Atlantic Aviation, I find that Driscoll would have earned at least $11,399.96 per annum as Chief Flight Instructor for the duration of his work-life expectancy.

The parties dispute the amount by which Driscoll's earnings would have increased had he lived. There are two aspects to this question: whether Driscoll would have been promoted and in what increments would his salary have been increased.

Plaintiff contends that had Driscoll lived, on June 7, 1976, he would have been promoted to the position of Co-Pilot, Light Turbine Aircraft, at a minimum annual salary of $15,000.00. From this position, plaintiff further contends, Driscoll would have advanced routinely through the Atlantic Aviation pilot hierarchy until, by 1992, he would have attained the position of Captain, Heavy Turbine Aircraft, at a minimum annual salary of $24,300.00. The defendant views the evidence of such future promotions as sheer speculation.

■ Under Maryland law, evidence of future promotions is relevant in determining the lost future earnings of a decedent in a wrongful death action. *Maryland ex rel. Pryor v. Miller*, 180 F. 796, 810 (D.Md.1910), *modified on other grounds*, 194 F. 775 (4th Cir. 1911), *cert. denied*, 225 U.S. 703, 32 S.Ct. 836, 56 L.Ed. 1265 (1912); *Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804, 819 (Ct.Spec.App.1972), *rev'd on other grounds*, 267 Md. 559, 298 A.2d 391 (Ct.App. 1973) (affirming appellate court's opinion as to calculation of wrongful death damages). Such evidence is not speculative where the future promotions would have been automatic with the passage of time. *Sun Cab Co. v. Walston, supra*, 15 Md.App. 113, 289 A.2d at 819.

At trial, the plaintiff painstakingly adduced testimony and documentary evidence concerning Driscoll's promotion possibilities at Atlantic Aviation. Mr. Arthur W. Gorman, Manager of the Flight Operation Department of Atlantic's Wilmington Division, testified in great detail about the course of pilot promotions within the company. In addition, the employment records of several pilots were introduced into evidence.

Generally, Atlantic Aviation pilots are divided into two categories according to the type of plane they fly: light turbine and heavy turbine. The normal progression for a pilot at Atlantic would begin with his employment in Mr. Gorman's Flight Operation Department as a co-pilot of light turbine aircraft. From this position, a pilot would advance to co-pilot, heavy turbine aircraft, captain, light turbine aircraft, and captain, heavy turbine aircraft, in the normal course of promotion through the Flight Operation Department. It is the policy of Atlantic Aviation to fill vacancies with currently-employed company pilots.

Mr. Gorman is personally involved with pilot promotions in the Flight Operation Department of Atlantic's Wilmington Division. Based upon his analysis of the Department's employment records, Mr. Gorman testified that, on the average, a co-pilot of light turbine equipment is promoted to co-pilot, heavy turbine equipment, within seven years after being hired. Furthermore, the average interval between promotion to co-pilot of heavy turbine equipment and promotion to captain, light turbine equipment, is 1.4 years. Finally, on the average, a captain of light turbine equipment will be promoted to captain, heavy turbine equipment within seven years of his promotion to the lower rank. In sum, then, the employment records of Atlantic Aviation indicate that, on the average, a pilot will be promoted from co-pilot, light turbine aircraft, to pilot, heavy turbine aircraft, within 15.4 years of the date on which he was hired by the Flight Operation Department. The employment histories of the individual pilots that were introduced into evidence bear out this normal progression for Atlantic Aviation pilots.

Driscoll was not a pilot in the Flight Operation Department at the time of his death. Rather, he was employed by Atlantic Aviation's Wilmington Flight School as the Chief Flight Instructor. There was evidence, however, that his promotion to Mr. Gorman's department was not far off in 1974.

Mr. Gorman testified that, in recruiting pilots for the Flight Operation Department, preference is given to pilots at the Wilmington Flight School. As Chief Flight Instructor, Driscoll was in line for the next opening in the Flight Operation Department, according to Gorman. In fact, the pilot who was hired to replace Driscoll was promoted to Mr. Gorman's department when the next vacancy occurred (June, 1976).

Based upon the pilot promotion policies of Atlantic Aviation, the testimony of Mr. Gorman, and the actual promotion of the man who replaced Driscoll, I find that the decedent automatically would have been hired by the Flight Operation Department when the next vacancy occurred (June, 1976). The entry position in this department is co-pilot, light turbine equipment, and the starting salary in 1976 was $15,609.10 per annum (this was the salary received by Driscoll's successor when he was promoted).

As to subsequent promotions, the evidence is less clear. In view of his experience, it was possible, perhaps even probable, that Driscoll would have followed the routine progression through the Atlantic Aviation pilot hierarchy and, by 1992, have attained the rank of captain, heavy turbine equipment. Unlike his promotion to co-pilot, light turbine equipment, however, Driscoll's future advancement beyond that rank cannot be tied to an actual promotion of a similarly-situated pilot (e. g., his successor).

■ I conclude, therefore, that the evidence of Driscoll's future promotion possibilities is too speculative to justify a finding that he would have been promoted beyond the rank of co-pilot, light turbine aircraft.

In sum, then, I find that Driscoll would have been promoted from Chief Flight Instructor to Co-Pilot of Light Turbine Equipment by June, 1976, at which time his salary would have increased to $15,609.10 per annum.

Apart from his promotion possibilities, the parties dispute the amount by which Driscoll's earnings would have increased had he lived and continued to work. Based upon the decedent's employment history and the annual average salary increase for skilled workers in the Philadelphia labor market between 1967 and 1973, plaintiff's expert economist, Dr. Tannian, projected an average annual salary increase for Driscoll of at least 6.6 percent. The Government's expert economist, Dr. Link, on the other hand, projected an average annual salary increase for Driscoll of only 5.2%, based upon the annual average salary increase for all persons in the national non-farm economy between 1950 and 1975.

In the years preceding his death, Driscoll's income had been increasing. This steady rise in earnings was attributable both to the decedent's change in jobs and to his advancement at Atlantic Aviation.

Furthermore, the evidence established that it was the policy of Atlantic Aviation to provide annual salary increases to its pilots. These annual increases generally ranged between six and seven percent. Mr. Gorman, who personally initiated all salary adjustments for pilots, testified that the annual raises are the company's policy. The employment records that were introduced into evidence reflect average annual increases of 7.45% for Atlantic Aviation pilots for the years 1972 through 1977.

In view of this evidence, the wage growth factor used by Dr. Tannian seems more appropriate than that used by Dr. Link. The 5.2% figure was based upon all employees in the national non-farm economy. Although Driscoll did fall within that category, a more precise categorization is possible. Thus, Dr. Tannian's projection of 6.6% was based upon the average annual salary increases for skilled workers in the Philadelphia labor market. Since the latter classification more accurately describes the employment classification into which Driscoll would have been placed, and is derived from a geographical area which also is narrowly-defined, I conclude that the 6.6% wage growth factor is more appropriately applied to project Driscoll's future income. This conclusion is bolstered by the historically known wage increase of 7.97% for the state of Delaware in the year following Driscoll's death, Atlantic Aviation's policy with regard to pilot salaries, and the established average annual salary increases of 7.45% for company pilots between 1972 and 1977.

Based upon Driscoll's steadily rising income during the years preceding his death, and upon the evidence concerning the salary increases received by Atlantic Aviation pilots and the company policy in this regard, and upon the expert testimony on this point, I find that Driscoll's salary would have increased by at least 6.6% per annum over the course of his working life had he not been killed.

Had Driscoll not been killed on May 16, 1974, and had he continued in the employ of Atlantic Aviation until his normal retirement date, he would have been eligible for the pension benefits detailed in the company's pension plan. PDR 18. The normal retirement pension to which Driscoll would have been entitled can be computed in the following manner:

1% of his salary not in excess of $6,600 in each year that he worked or would have worked, or approximately $2,376 per year, plus one and one-half percent of his salary in excess of $6,600 in each year that he worked or would have worked.

██ Mrs. Cain is entitled to recover a portion of these lost pension benefits, discounted to present value, over the projected duration of the joint life of her and her husband, had he lived.

In summary, I find that

1. Ellison C. Driscoll, Jr., was earning $11,399.96 per annum as of May 16, 1974.

2. Driscoll's salary would have increased by at least 6.6% per annum over the course of his working life had he not been killed.

3. In June, 1976, Driscoll would have been promoted to co-pilot of light turbine equipment at an annual salary of $15,609.10.

4. Upon his normal retirement from Atlantic Aviation in 2008, Driscoll would have been entitled to pension benefits as detailed in the company's pension plan (PDR 18). (The parties will be directed to submit an estimate of the amount of pension benefits Driscoll would have received, based upon this Court's findings of fact concerning his lost future earnings.)

Household Services:

Driscoll assisted in home maintenance, including shopping, child care, and the making of some furniture. As a result of his death, the Driscoll plaintiffs have been deprived of the decedent's household services and are entitled to recover the reasonable value of such lost services. *Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804, 820 (Ct.Spec.App.1972), *rev'd on other grounds*, 267 Md. 559, 298 A.2d 391 (Ct.App.1973) (affirming appellate court's opinion as to calculation of wrongful death damages); *Industrial Service Co. v. State ex rel. Bryant*, 176 Md. 625, 6 A.2d 372, 376–77 (Ct.App.1939).

■ Based upon the testimony of Mrs. Cain, I find that Driscoll performed routine home maintenance work for approximately two hours per week during his lifetime. Furthermore, based upon the expert witness' testimony, I find that the reasonable cost of such services is approximately $5.00 per hour. I conclude, therefore, that a reasonable estimate of the lost value of Driscoll's household services is $500 per year for the duration of the couple's joint life expectancy.

Mortality:

■ In determining the proper recovery of the widow of Ellison C. Driscoll, Jr., this Court must take into account the joint probability of mortality of Mr. and then-Mrs. Driscoll. *Baltimore Transit Co. v. State ex rel. Castranda*, 194 Md. 421, 71 A.2d 442, 448 (Ct.App.1950). Thus, in calculating Mrs. Cain's pecuniary loss resulting from her husband's death, this Court must project the amount of income attributable to Mr. Driscoll over the period that *both* he and his wife could have expected to live, that is, their life expectancy as a couple. *See, e. g., Industrial Service Co. v. State ex rel. Bryant*, 176 Md. 625, 6 A.2d 372, 373–74 (Ct.App.1939). *See also Jennings v. United States*, 178 F.Supp. 516, 531 (D.Md.1959), *rev'd on other grounds*, 291 F.2d 880 (4th Cir. 1961) (affirming district court's calculation of wrongful death damages); *Zink v. State ex rel. Renstrom*, 132 Md. 670, 104 A. 264, 266–67 (Ct.App.1918); *President, Baltimore & Reisterstown Turnpike Road v. State ex rel. Grimes*, 71 Md. 573, 18 A. 884, 887 (Ct.App.1889).

Betty Jane (Driscoll) Cain is a white female and was born October 30, 1945. She is the surviving spouse of Ellison C. Driscoll, Jr., and was 28 when he was killed. Mrs. Cain's life expectancy on the date of her husband's death was 50.3 years, or to age 78. As previously noted, Driscoll also was 28 years of age when he died. His life expectancy at the time was 43.7 years, or to age 72. As a couple, the Driscolls' joint life expectancy as of May 16, 1974, was between thirty-five and forty-four years (the parties will be directed to submit an exact figure). Both of the Driscolls were in good health in 1974 and there is no reason to believe that the couple would not have lived out the projected duration of their joint life.

The Driscolls' joint life expectancy is longer than Mr. Driscoll's work-life expectancy. Thus, Mrs. Cain will recover her share of Driscoll's lost future earnings for the duration of his projected working life, that is, through 2008. As to the recovery by her of his lost pension benefits and household services, however, she only may recover for the projected duration of their joint lives.

Deduction for the Decedent's Personal Use and Consumption:

█ Having established the manner in which the amount of lost future income that would have been attributable to Ellison C. Driscoll, Jr., will be determined, it is necessary that this amount be reduced to account for that portion of his projected earnings which Driscoll himself would have consumed. *Cincotta v. United States,* 362 F.Supp. 386, 408 (D.Md.1973).

Prior to his death, Driscoll resided with his wife and daughter in a house owned by him and his wife at One Caxton Drive, New Castle, Delaware. The decedent was a family-oriented man and did not have recreations which consumed significant monies. The Driscolls had certain fixed household debts: mortgage payments, car payments, a settlement loan, and a personal loan. The family expenditures of the Driscolls were not significantly different from other families with whom the Driscolls associated.

After the birth of their daughter, Kerry, Mrs. Driscoll found it necessary to return to teaching in order to help pay for the recently-purchased home in New Castle. At the time of Driscoll's death in 1974, however, the debts owed by the decedent and his wife were paid off for the most part.

Based upon Driscoll's personal habits, the fact that he had an infant daughter to support, and after considering the expert opinion of Dr. Tannian, I conclude that as of May 16, 1974, approximately 35% of Driscoll's income went to his personal maintenance and support.

When his daughter reached her majority, of course, Driscoll's personal consumption of his income would have increased. Again, based upon the evidence concerning the decedent's personal habits and Dr. Tannian's expert opinion, I conclude that in the year that Kerry E. Driscoll reached her majority, Driscoll's personal consumption of his income would have risen to 40 percent.

(Driscoll's percentage consumption of his income would never have reached .500 in view of the fixed expenses involved in maintaining a household regardless of whether there are one or two occupants.)

In sum, then, for the years 1974 through 1990, I find that Driscoll would have consumed approximately 35% of his income. For the years following 1990, covering the remainder of the projected duration of the joint life of the Driscolls, the personal use and consumption attributable to the decedent would have been 40 percent.

The Discount Factor:

█ In calculating the present value of the pecuniary losses sustained by the Driscoll plaintiffs as a result of the death of Ellison C. Driscoll, Jr., this Court must reduce their projected future losses to present worth. *Chesapeake & Ohio Ry. v. Kelly,* 241 U.S. 485, 489, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); *Sun Cab Co. v. Walston,* 15 Md.App. 113, 289 A.2d 804, 813 (Ct.Spec.App.1972), *aff'd on this ground,* 267 Md. 559, 298 A.2d 391, 398 400 (Ct.App.1973).

Based upon the expert testimony adduced at trial, I conclude that 6% is the appropriate discount factor to be applied in reducing plaintiffs' pecuniary loss recovery to its present worth.

After calculating the amount of Driscoll's lost future income in accordance with the findings and conclusions *supra,* and after deducting from that amount the portion of the decedent's lost income which he would have dedicated to his personal use and consumption, as outlined *supra,* the remainder —plaintiff's recoverable pecuniary loss— will be discounted to present value at the rate of six percent.

Apportionment of Shares:

Having determined the manner in which plaintiff's pecuniary loss recovery will be calculated, and having found the appropriate discount rate to be applied, it remains only to allocate this recovery between the individual plaintiffs, as required by the Maryland wrongful death statute. Md.Cts. & Jud.Proc. Code Ann. § 3–904(c).

Based upon her testimony and that of Dr. Tannian, I conclude that Mrs. Cain's share of the plaintiff's pecuniary loss recovery

should be 80% of the amount attributable to the years 1974 through 1990, the years of her daughter's minority, and, of course, 100% of the amounts attributable to the years thereafter.

The recovery of Kerry E. Driscoll, the infant daughter of Ellison C. Driscoll, Jr., will be estimated up to the time of her majority. *Cincotta v. United States*, 362 F.Supp. 386, 407 (D.Md.1973); *Baltimore Transit Co. v. State ex rel. Castranda*, 194 Md. 421, 71 A.2d 442, 448 (Ct.App.1950). Based upon the evidence adduced at trial, I conclude that Kerry E. Driscoll should be awarded 20% of the plaintiffs' pecuniary loss recovery attributable to the years 1974 through 1990.

### Non-Pecuniary Loss

■ The Maryland wrongful death statute does not limit recoverable damages to pecuniary losses attributable to the death of the decedent. Rather, an award under the statute "may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable." Md. Cts. & Jud.Proc. Code Ann. § 3–904(d). Such damages are referred to as "solatium."

Plaintiffs concede that solatium-type damages are not recoverable by a child under Maryland law. *Alden v. Marynov*, 406 F.Supp. 547, 548–50 (D.Md.1976); *Todd v. Weikle*, 36 Md.App. 663, 376 A.2d 104, 106, 112–15 (Ct.Spec.App.1977); *Barrett v. Charlson*, 18 Md.App. 80, 305 A.2d 166, 167–76 (Ct.Spec.App.1973). Thus, Kerry E. Driscoll is not entitled to solatium for the death of her father.

On the other hand, Mrs. Cain may recover for her mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice, and counsel resulting from the death of her husband.

The Driscolls were married on December 23, 1967. They had a daughter, Kerry Elizabeth, born November 17, 1972. Their marriage was a happy one, without any separations. At the time of Driscoll's death in 1974, the couple had been married six years.

Mrs. Driscoll remarried to become Mrs. Cain on April 10, 1976. She met Mr. Cain approximately six months after Driscoll's death and, after an eighteen-month courtship, the couple was married.

■ There is no question that Driscoll's death caused his widow to suffer mental anguish and emotional pain and suffering. Unlike the other widow in this case, however, Mrs. Cain is a young woman who has been able to find solace and renewed companionship in a second marriage. Under Maryland law, that the surviving spouse of the decedent has remarried is relevant to this Court's determination of an appropriate award for solatium. *Plant v. Simmons Co.*, 321 F.Supp. 735, 740 (D.Md.1970).

■ I conclude that $35,000 is a reasonable amount to award Mrs. Cain as solatium.

### The Survival Action

In her capacity as Administratrix of the Estate of Ellison C. Driscoll, Jr., Mrs. Cain seeks to recover for the damages sustained by the decedent. In the survival action, the plaintiff asks for both funeral expenses and compensatory damages for the decedent's pain and suffering.

### Funeral Expenses

As administratrix of the Estate of Ellison C. Driscoll, Jr., Mrs. Cain paid funeral expenses in the amount of $1040.00. I find that this amount was reasonable. Under the Maryland statute in effect at the time of Driscoll's death, however, the permissible recovery for funeral expenses is limited to $1,000. Md. Decedents Est. Code Ann., art. 93, § 7–401(n) (1957).

■ I conclude, therefore, that in her capacity as Administratrix of the Estate of Ellison C. Driscoll, Jr., Betty Jane (Driscoll) Cain is entitled to recover $1,000 from the defendant, the United States of America.

*Pain and Suffering*

As previously decided, the negligence of the jeep driver, a Government employee, was the direct and proximate cause of the collision between the jeep and the Piper Cherokee airplane, and the cause of the subsequent crash of the plane which resulted in the death of Ellison C. Driscoll, Jr. Driscoll was not killed at the instant of impact between the jeep and the plane but certainly was killed instantly when the plane crashed onto the runway some two minutes later. Given these facts, the plaintiff may recover for the pain and suffering experienced by the decedent between the time of the tort and his death. *Tri-State Poultry Cooperative, Inc. v. Carey*, 190 Md. 116, 57 A.2d 812, 813–18 (Ct.App.1948).

During the interval between the collision with the jeep and the crash of the plane upon the runway, Ellison C. Driscoll, Jr., must have suffered intense mental anguish and emotional pain and suffering. As the pilot of the plane climbed steeply to avoid the collision with the jeep and as the plane nearly "stalled", Driscoll must have been frightened greatly, if he was not panic-stricken. During the agonizing two minutes that the pilot slowly circled the airport in an attempt to land the plane safely, Driscoll must have suffered emotionally as he pondered whether the plane would crash. Finally, during the few seconds that the plane plunged to the ground after its nose fell off, Driscoll certainly suffered intense mental anguish as he contemplated, however briefly, the certain, imminent, and violent end of his life.

I find that $25,000 is a reasonable amount by which to compensate the Estate of Ellison C. Driscoll, Jr., for the mental anguish and emotional pain and suffering sustained by the decedent between the time of the accident and his death.

In summary, I conclude that Betty Jane (Driscoll) Cain, in her capacity as Administratrix of the Estate of Ellison C. Driscoll, Jr., is entitled to recover from the United States the following amounts:

1. $1,000 for funeral expenses;

2. $25,000 for the decedent's mental anguish and pain and suffering.

*Interest and Costs*

The plaintiff is entitled to recover interest on the amount of her judgment against the United States, at the rate of 4% per annum, to begin on the date on which an order is entered pursuant to this opinion. 28 U.S.C. § 2411(b).

Furthermore, the plaintiff is entitled to a judgment for costs against the defendant, the United States, pursuant to 28 U.S.C. §§ 1920 and 2412, in reimbursement for the expenses incurred by the plaintiff in litigating this action.

The foregoing constitutes this Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).