This appeal is from a judgment on the verdict of a jury for $5,000, in favor of the appellee, for the death of her husband in a collision at a railroad crossing between the automobile of the deceased and a locomotive of the appellant. The accident occurred at the Severn road crossing at about 1:30 P.M. on May 25th, 1918.
The first count of the declaration charges that the safety gates at said crossing were negligently and carelessly operated in that they were not lowered nor any notice given to the deceased of the approach of said locomotive and train, to warn the said deceased in time to allow him to arrest the progress of his automobile and prevent its collision with the said locomotive and train of cars, which were being operated under the direction and government of the agents, employees and servants of the defendant at an excessively high and dangerous rate of speed.
The second count, which was added as an amendment, alleges that the defendant caused and procured to be erected and maintained certain gates *Page 498 
 "for the purpose of preventing travel of said tracks at said crossing, and placed a watchman there for the purpose of raising and lowering said gates as occasion required; that at the time aforesaid while the husband of the equitable plaintiff was riding in an automobile along and upon the said Severn road, exercising due and ordinary care for his safety, the said gates were suddenly dropped on said automobile by the said watchman, injuring and disabling the automobile, and causing the said automobile to collide with a fast moving train at the time under the control and management of the defendant; that the said accident was caused by the negligence and carelessness of the agents and servants of the defendants in the premises, and through no fault upon the part of the husband of the said equitable plaintiff. That as a result of the said accident the husband of the equitable plaintiff herein was killed and did then and there almost immediately die. And the plaintiff claims $50,000 damages."
General issue plea was filed and issue joined.
The only bill of exception is to the granting of plaintiff's prayer and to the rejection of defendant's eighth, ninth, tenth, eleventh and twelfth prayers.
The prayers are as follows, viz:
Plaintiff's Prayer — "The plaintiff prays the Court to instruct the jury, that if the jury should find a verdict for the plaintiff, they may, in estimating the damages to be allowed, consider what was the pecuniary loss which the said Alice C. Hurst, widow, has sustained by reason of the negligent killing (if the jury so find) of her said husband, and may consider the reasonable probabilities of the continuance of the joint lives of said Thomas M. Hurst and Alice C. Hurst but for the negligent killing of her husband (if the jury so find), and may allow her such damages as in their judgment would compensate her for such pecuniary loss as she has sustained, and reasonably will sustain by reason of said killing of her husband." (Granted.) *Page 499 
 Defendant's First Prayer — "The defendant prays the Court to instruct the jury that the burden of proof is upon the plaintiff to satisfy the jury by the preponderance of evidence that the accident complained of was caused by the negligence of the defendant." (Granted.)
Defendant's Second Prayer — "If the jury finds from the evidence that the accident complained of was caused partly by the negligence of the defendant contributing thereto and partly by the negligence of the husband of the equitable plaintiff, the driver of the automobile, directly contributing thereto in any degree, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant." (Granted.)
Defendant's Third Prayer — "The Court instructs the jury that the train mentioned in the evidence, operated by the defendant, had the right of way at Severn crossing on the afternoon of May 25, 1918; that it was the duty of the driver of the automobile mentioned in the evidence, as he approached the said crossing, not to rely exclusively upon the operation of the gates maintained at the crossing by the defendant, but to look and listen for the approach of trains on the railroad tracks operated by the defendant, before attempting to pass under the said gates, and if the jury shall find from the evidence that the said driver of said automobile did not as he approached said crossing at Severn on the afternoon of May 25, 1918, the date of the accident, look and listen before attempting to pass under the gate upon the east side of the said crossing and if the jury shall believe from the evidence that if the driver had so looked and listened he would have seen or heard the defendant's train in time, by the exercise of ordinary care, to avoid the accident, the plaintiff is not entitled to recover and the verdict must be for the defendant." (Granted.)
Defendant's Fourth Prayer — "That it is the duty of a driver of an automobile when approaching from the east the crossing mentioned in the evidence, up to the time that he *Page 500 
reaches the east gate of the crossing, to have his machine under control and to look and see whether the gates are down, or are coming down, and to look and listen to ascertain whether a train is approaching, and if the jury shall find from the evidence in this case that the husband of the equitable plaintiff, the driver of the automobile mentioned in the evidence, failed to observe these precautions and that such failure on his part was the direct and proximate cause of the accident, without which the accident would not have happened, the verdict of the jury must be for the defendant." (Granted.)
Defendant's Fifth Prayer — "The defendant prays the Court to instruct the jury that it was the duty of the husband of the equitable plaintiff, the driver of the automobile mentioned in the evidence, as he approached the crossing at Severn on the afternoon of the accident complained of in this case, to anticipate the fact that the gates, mentioned in the evidence, at the said crossing, might be lowered at any moment for an approaching train, and it was his duty, up to the time he reached the east gate at said crossing, to look to see whether the same was coming down and to have his machine under such control as to be able to stop the same if the gate started to come down before he reached the gate, and if the jury shall find that said husband of the equitable plaintiff failed to observe these precautions, and that such failure on his part was the direct and proximate cause of the accident, without which the accident would not have happened, the verdict of the jury must be for the defendant." (Granted.)
Defendant's Sixth Prayer — "The Court instructs the jury that the train mentioned in the evidence, operated by the defendant, had the right of way at Severn crossing on the afternoon of May 25, 1918, and if the jury shall find from the evidence that as the said train approached said crossing at Severn on the afternoon of May 25, 1918, the time of the accident, the whistle on the engine of said train was sounded at or about the whistling post mentioned in the evidence, if *Page 501 
the jury shall find that there was such whistling post, and shall further find that the bell on the engine was rung and if the jury shall find that the crossing watchman was at his post at the time of the accident at the crossing, and that the said watchman lowered the crossing gates mentioned in the evidence, on the approach of said train and that the gate on the east side of said crossing was lowered before the automobile reached the said gate, then the verdict must be for the defendant, the Director-General of Railroads." (Granted.)
Defendant's Seventh Prayer — "If the jury shall find from the evidence that on the occasion of the accident in question it took the defendant's crossing watchman five seconds to lower the east gate at Severn crossing from the time said gate began to move and shall further find that the gate was lowered upon the automobile of the husband of the equitable plaintiff at the time of the accident, then their verdict must be for the defendant, the Director-General of Railroads." (Granted.)
Defendant's Eighth Prayer — "The jury are instructed that there is no legally sufficient evidence under the pleadings that the accident complained of in the declaration was the result of any act of negligence on the part of the defendant and their verdict must be for the defendant." (Refused.)
Defendant's Ninth Prayer — "The jury are instructed that there is no legally sufficient evidence under the pleadings that the accident complained of in the amended declaration was the result of any act of negligence on the part of the defendant and their verdict must be for the defendant." (Refused.)
Defendant's Tenth Prayer — "The defendant prays the Court to instruct the jury that the undisputed evidence in this case shows that the husband of the equitable plaintiff, the driver of the automobile, mentioned in the evidence, directly contributed to the happening of the accident complained of in this case, by his want of ordinary care and prudence and the verdict must be for the defendant, the Director-General of Railroads." (Refused.) *Page 502 
 Defendant's Eleventh Prayer — "The Court instructs the jury that the train mentioned in the evidence, operated by the defendant, had the right of way at Severn crossing on the afternoon of May 25, 1918; that it was the duty of the driver of the automobile mentioned in the evidence as he approached the crossing, not to rely exclusively upon the operation of the gates maintained at the crossing by the defendant, but to stop, look and listen for the approach of trains on the railroad tracks operated by the defendant, before attempting to pass under the said gates, and if the jury shall find from the evidence that the said driver of said automobile did not as he approached said crossing at Severn on the afternoon of May 25, 1918, the date of the accident, stop, look and listen before attempting to pass under the gate upon the east side of the said crossing and if the jury shall believe from evidence that if the driver had so stopped, looked and listened he would have seen or heard the defendant's train in time, by the exercise of ordinary care, to avoid the accident, the plaintiff is not entitled to recover, and the verdict must be for the defendant." (Refused.)
Defendant's Twelfth Prayer — "The defendant prays the Court to instruct the jury that it is the duty of a driver of an automobile, when approaching from the east, the crossing mentioned in the evidence, up to the time he reached the east gate at said crossing, to have his machine under control, to look and see whether the gate at the crossing is down or whether it is coming down for the approach of a train, to look and listen to ascertain whether a train is approaching and if the view is obstructed in any manner or if because of the sounding of the horn or because of any noise made by the machine, the driver is unable to hear, he must stop, look and listen to ascertain whether a train is approaching, and if the jury shall find that the husband of the equitable plaintiff, the driver of the automobile, failed to observe these precautions and that such failure on his part was the direct and proximate cause of the accident, without which the accident would not have happened, the verdict of the jury must be for the defendant." (Refused.) *Page 503 
The testimony in the record shows that the crossing was a dangerous one, and that the view of one approaching it from the east, as the deceased was approaching, of trains coming from the north, was obstructed by houses along the north side of the Severn road and by a fence and shrubbery about the railroad property and by the station buildings. One of the witnesses for the plaintiff, however, testified that if one stopped and looked carefully at a point between the postoffice and the tracks he could see an approaching train.
Three witnesses testified that the gate did not begin to come down until the automobile of the deceased was going under it, and two of them swore the deceased slowed down, sounded his horn three times and was going very slowly as he approached the track. These witnesses swore the gate was dropped suddenly and struck the deceased on the neck, disabling him and causing him to lose control of the automobile which kept going until the collision. These witnesses further testified that they could not see the train coming until they got on the tracks. Several photographs were shown by defendant at the argument in this Court from which it appeared that there were one or more places from which one stopping and looking carefully could see an approaching train.
According to the testimony of the witnesses on both sides the gate was broken when found after the accident.
It does not appear from the evidence of the plaintiff what care the deceased used in the matter of looking and listening, but it does not affirmatively appear from the evidence that there was any want of care in this respect, unless the failure to stop before going under the gate was negligence per se.
There is very strong and positive evidence on the part of the defendant not only of the exercise of due care in giving signals and lowering the gate, but also of gross negligence on the part of the deceased. Several witneses for the defendant testify that deceased approached the gate driving rapidly and ran into the gate after it was lowered. One of these witnesses testified that deceased was busily engaged in conversation with the boys who were with him and paid no *Page 504 
attention to the lowering of the gate, but went right through the gate after it was lowered.
The watchman testified that it took him five seconds to lower the gates, but in answer to a further question said he could put them down a little faster than that.
It was for the jury of course to pass upon the conflicting testimony, if there was any evidence legally sufficient to go to them. Appellant objects to appellee's prayer, because: (1) It provides for a measure of damages if the jury find that the plaintiff's husband was "negligently killed," and does not require the jury to find "that the killing was caused by the negligence of the defendant." (2) It excludes altogether all consideration of contributory negligence on the part of the plaintiff's husband.
But this prayer is only a damage prayer and does not go to the right of recovery. Everything in this prayer is predicated upon a finding by the jury of a verdict for the plaintiff, which of course they could not do unless they found that the killing was caused by the negligence of the defendant, and that plaintiff was not guilty of contributory negligence — and on both these points the jury was fully instructed by other granted prayers. See B. O.R.R. Co. v. Stump, 97 Md., at p. 89. We find no error in the granting of this prayer.
The eighth, ninth, tenth, eleventh and twelfth prayers of the defendant, if they had been granted, would have withdrawn the case from the jury, the first three of these expressly, and the last two by directing a verdict for the defendant if the jury should find that plaintiff failed to stop his automobile before attempting to cross the tracks, because it is conceded that he did not stop.
Counsel for defendant argued very strongly that the ninth prayer should have been granted because he says there is no evidence legally sufficient to sustain the allegation in the additional count that the gates were suddenly dropped upon the machine driven by the husband of the equitable plaintiff by the negligence of the watchman. Of course counsel could *Page 505 
not contend in face of the testimony of the three witnesses for plaintiff above referred to that no one swore to that fact. But he argues that the physical facts in the case are such as to rob this testimony of all credibility; that it was physically impossible for the gates to come down upon the automobile as testified to by these three witnesses, and to be broken as testified to by one of them, because the gates were lowered by means of a mechanical arrangement which was operated by the watchman, who lowered the gates at the time of the accident, as well as at other times, by turning the handle attached to the gate post on the west side of the tracks, and that it took him five seconds to lower the gates; and it would have been impossible for the gate to have struck the deceased if, as these witnesses testified, it had not begun to come down before he got under it. This argument would be irrefutable if it were true that it took five seconds to lower the gate — but the watchman did not stick to that statement — he said he could do it in a little less than that. Besides, in order to say as a matter of law that the testimony of the plaintiff's witnesses must be disregarded on account of the physical facts, even if five seconds had been definitely fixed by the watchman as the time required to lower the gates, it would be necessary to assume both that his testimony was true and also that the machinery was perfect and infallible. Neither of these assumptions could be made for such a purpose. Neither can it be assumed, as argued by counsel, that the gate could not have been broken if it struck the deceased, as testified to by the plaintiff's witnesses. It is true that a witness for the defendant testified to the substantial construction of the gate, and if that be true, it is difficult to understand how it could have been broken without coming in contact with something harder than a man's neck; or how it could have been broken up in the automobile without injuring one or both of the boys who were riding in it, one by the side of the deceased and the other on the rear seat. But to say that this was impossible would be to disregard human experience as to what can happen in accidents of this kind. *Page 506 
These were matters for the jury to decide and could not properly have been decided as matters of law. The jury were told by defendant's seventh prayer that if they should find that it took five seconds to lower the gate from the time it began to move and that the gate was lowered upon the automobile at the time of the accident, then their verdict should be for the defendant. This prayer presented to the jury the proposition contended for by defendant in the most favorable light possible for the defendant.
The eighth and ninth prayers were properly rejected. The defendant by its tenth prayer sought to have the case withdrawn from the jury on the ground of contributory negligence. There was no undisputed evidence of contributory negligence unless the failure of deceased to stop his car can be so considered. As this is also the point involved in the eleventh and twelfth prayers these three prayers will be considered together.
The rule announced in Hogeland's case, 66 Md. 149, and approved by this Court in numerous cases since, is that one attempting to cross the tracks of a railroad is bound to look and listen for approaching trains, and if the crossing is one of more than ordinary danger, and the view of the tracks is obstructed at or near the place of crossing, it is the duty of the traveler tostop, look and listen before he attempts to cross, and especially is this required when one approaches such crossing in a vehicle, the noise of which may prevent the train from being heard, and if a person neglects those necessary precautions and in consequence of such neglect is injured, he will be held to have contributed by his own negligence to the occurrence of the accident and will not be allowed to recover. Glick's case,124 Md. 313; Cullen's case, 127 Md. 651.
Under this rule, except for the safety gates, the plaintiff in this case could not recover because the deceased did not stop, when by stopping he could have seen or heard the approaching train. But this Court distinctly held in the case of Baltimore Ohio R.R. Co. v. Stumpf, 97 Md. 78, that a *Page 507 
prayer was bad which asked that the jury be instructed that the fact that the safety gates were open and the gateman absent, did not in itself justify the plaintiff in going upon the track, but that it was his duty to stop, look and listen before going on the track.
JUDGE PEARCE, speaking for this Court, in that case said: "This is the first case in this Court in which it has been sought to apply the rule of stop, look and listen, arbitrarily, to a case where safety gates required by law to be kept closed on the approach of a train were open as the traveller approached the crossing, and we have given it careful consideration. It may be conceded unhesitatingly that the mere fact that such gates are open cannot, alone, and in all cases, justify a traveler in going upon the track at the crossing, and that there are cases in which it may be the traveler's duty to make independent observation by stopping, as well as by looking and listening, before doing so. The case of Pa. R.R. v. Pfeulb, 60 N.J. Law, 278, is such a case. There the proof was that though the gates were up as plaintiff approached, an east bound train was then passing, and he waited until it passed, and then went upon the track and was struck by a train coming in the opposite direction, which he could not have failed to see if he had looked; and the Court properly said: `He knew the gateman had neglected his duty and that he could not rely with confidence upon the fact that the gates were up.' So also, if one seeing the gates up, but also seeing an approaching train near at hand, should attempt to cross before it, merely because the gates were open, or because he chose to risk the experiment, the open gate could not relieve him of the consequences of his own want of due and ordinary care.
"None of the cases in this Court in which the failure to stop, look and listen before crossing a railroad track has been declared negligence per se, from Hogeland's case in66 Md. 149, to Roming's case, 96 Md. 67, have involved the question of safety gates, and none of them have announced any principle which would either require or, in our opinion, justify *Page 508 
the application of the rule invoked to such a case as the preent. In Roming's case the B. O.R.R. Co. voluntarily maintained a gate at the crossing in question, but it was operated only in the day time, and did not enter into the consideration of that case.
"The rule has been so applied in Pennsylvania, but the great weight of authority in England and America is the other way."
Continuing, JUDGE PEARCE reviewed the authorities in England and in other States of this country, from which it may be gathered that where such gates are maintained, an open gate is a substantial assurance of safety, and it is not the duty of a traveller to stop, except when danger in crossing is apparent notwithstanding the open gate; and that except where the traveller attempts to cross in the face of obvious danger, if he be injured while crossing through an open gate, the question whether he was guilty of contributory negligence is for the jury.
The ruling on this point in the Stumpf case was cited and approved in the Gilmore case, 100 Md., at p. 413.
In the Stumpf case, it is true, the gates were required by law to be maintained, and it does not appear from the record whether in this case they were required by law or were voluntarily maintained. But this can make no difference in principle, provided the travelling public had been led to rely upon such a provision for their safety.
The defendant's tenth, eleventh and twelfth prayers were therefore properly refused. An examination of defendant's granted prayers will show that every question raised by defendant was submitted to the jury in a way to emphasize the points urged by defendant as matters of defense.
Finding no error in the rulings of the lower Court the judgment will be affirmed.
Judgment affirmed, with costs to appellee. *Page 509