BALTIMORE & OHIO RAILROAD COMPANY *v.*
EDGAR BRUCHY.
[No. 37, April Term, 1931.]

*Decided June 11th, 1931.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Duncan K. Brent,* with whom was *Allen S. Bowie* on the brief, for the appellant.

*William D. Macmillan,* with whom were *Harold Tschudi* and *Edwin F. A. Morgan* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Edgar Bruchy, the appellee, was injured on December 27th, 1928, while attempting to cross the tracks of the Baltimore & Ohio Railroad Company, the appellant, where said tracks intersect the Lisbon Court Road at Woodbine, Carroll County, Md. He was driving a 1½-ton truck north on the Lisbon Road, and was struck by an eastbound freight train of appellant. This appeal is from a judgment on a verdict in favor of appellee in a suit for said injury.

The tracks of the defendant run approximately east and west, and the Lisbon Road approximately north and south. At this point there are three tracks, which, counting from the south, were the eastbound, the westbound, and a siding.

From plats and photographs and other testimony, as to which there is no controversy, it appears that there is a mill fronting thirty feet on the Lisbon Road, which completely obstructs the view to the west along the railroad of a person going northerly on the Lisbon Road until the north side of the mill is reached. This is at a point twenty-three feet south of the south rail of the eastbound track; and from this point until the track is crossed there is an unobstructed view

to the west down the tracks of 1,310 feet. At a point ninety-eight feet south of the eastbound track there is a view to the west along the track to a point 720 feet from the crossing. Continuing north towards the track, the extent of the view west along the track continues to increase until at a point ten feet south of the mill (fifty-three feet south of the track) the view extends to a point 1,142 feet west of the crossing.

The accuracy of measurements along the Lisbon Road and the track, and of the views from the respective points as disclosed by photographs, do not appear from the record to have been controverted, except by the statement of the plaintiff "that building (referring to the mill) sits out so far that you have got to practically drive your machine direct to the tracks, almost with your front wheels on the tracks, before you can see down to the left"; and by the statement of his companion in the truck, Harry S. Koockogey, "this building was situated so at the corner that you couldn't see up the railroad until you got your front wheels out on that track." But both these witnesses admitted they had made no measurements and did not know the distance of the mill from the track. In a matter of such vital importance, it was the duty of the plaintiff to measure the distance from the mill to the track if he really intended to question the accuracy of defendant's measurement. His experienced counsel certainly knew that distance would be an important consideration in the case. Indeed, there was no suggestion in the brief or oral argument of plaintiff that the measurements or the views shown by the photographers were inaccurate. In *Wash., B. & A. R. Co. v. Goodwin,* 140 Md. 115, 118, 116 A. 911, we commented on the effect of the failure of plaintiff to make measurements or to offer any testimony to show that photographs offered by defendant did not fairly represent conditions.

It is agreed that it is eight feet from the back of the driver's seat to the extreme front part of the truck.

The accident happened at about eight o'clock in the morning. The weather was clear. According to plaintiff's testimony, he had been driving the truck over that route for a

week, and was familiar with the crossing. When he got to within seventy-five to one hundred feet of the tracks, he slowed down to about five miles an hour—almost to a stop—went into low gear, and continued at that speed up to the track. When he came to the edge of the mill, so that he could see up the track towards the west, he looked in that direction and continued to look that way all the time.

The uncontradicted testimony is that the speed of the train was twenty-five miles an hour. There was a crossing bell at that crossing which, according to the testimony of several witnesses, failed to give warning of the approach of the train on that occasion. The question of defendant's negligence was therefore properly submitted to the jury. But defendant contends that its prayer for a directed verdict on the ground of contributory negligence of the plaintiff should have been granted, and the refusal to grant that prayer is the sole ground of this appeal.

Except for the evidence of the silent bell, there could be no question that the plaintiff should have been held guilty of contributory negligence as a matter of law. The train was in plain view of the plaintiff when the front of his car was fifteen feet from the eastbound track, at a time when, as he testified, he had come almost to a stop and was traveling only five miles an hour. It appears from the record that the Lisbon Road is level, if not slightly up grade, from a point 200 feet south of the crossing. There is nothing to indicate that at the speed plaintiff was going he could not have stopped the truck instantly.

"The rule is now firmly established in this state, as it is elsewhere, that it is negligence per se for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains; and, if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad tracks should stop, look, and listen before attempting to cross. *Phila., W. & B. R. Co. v. Hogeland,* 66 Md. 149, 7 A. 105, 107. See also, *Annapolis etc. R. Co. v. Hickox,* 104 Md. 659,

65 A. 434; *Manfuso v. Western Md. R. Co.*, 102 Md. 257, 62 A. 754; *Glick v. Cumberland & Westernport Elec. Ry.*, 124 Md. 308, 92 A. 778; *Siejak v. United Rwys. Co.*, 135 Md. 367, 109 A. 107; *Penna. R. Co. v. Yingling*, 148 Md. 169, 129 A. 36. And "if a witness who can see testifies that he looked, and did not see an object which, if he had looked, he must have seen, such testimony is unworthy of consideration." *Balto. Traction Co. v. Helms*, 84 Md., at p. 526, 36 A. 119, 121, and later cases, including *Gitomir v. United Rwys. Co.*, 157 Md. 464, 467, 146 A. 279.

But it is strongly urged by plaintiff that the rule announced in the *Hogeland* case, *supra*, is not applicable where there is a crossing bell; and *Balto. & O. R. Co. v. Windsor*, 146 Md. 429, 126 A. 119, 123, is cited in support of that argument. We were careful to limit the decision in the *Windsor* case to the facts of that case. It was there said: "It might well be that in other circumstances it would be proper and necessary for the court to hold the plaintiff guilty of contributory negligence as a matter of law, notwithstanding the existence of the element of a silent bell."

In that case it appeared that the train might not have been in sight when the plaintiff stopped, looked, and listened, when the front wheels of his car were about a foot from the south rail of the switch which he had to pass over before reaching the track on which he was struck. Relying upon the silence of the crossing bell, he went forward, without continuing to look in the direction of the approaching train, his attention having been drawn to an automobile which was approaching from the opposite side of the track. The point is: (1) He took the precaution to stop right at the crossing and to look and listen; (2) he did not continue to look and listen, because he relied upon the silence of the bell.

In the present case, it is difficult to understand why plaintiff could not have seen the approaching train, if he had looked, at a point ninety-eight feet south of the crossing, before reaching the mill which obstructed his view. It is mathematically demonstrable that he must have seen it if he looked when the front of his truck was fifteen feet from the

crossing. If he went on the crossing from a place of absolute safety without taking the precaution at least to turn his head in both directions, to look and listen for a train that might be approaching, he was guilty of contributory negligence, irrespective of whether or not he relied upon a crossing bell. There is a difference, at least in the degree of negligence, between proceeding across the tracks of a railroad without continuing to look, after having stopped and carefully looked and listened before going on the right of way, and going upon the right of way from a place of absolute safety without taking the trouble to look and listen at a point where an approaching train could be clearly seen. The case of *Pachmayr v. Balto. & O. R. Co.,* 157 Md. 256, 145 A. 611, cited by appellee, depends upon its own facts, which are easily distinguishable from the facts of the present case. We find no case where it has been held that a traveler may neglect all precautions for his own safety.

But there is another reason which prevents the element of the silent bell from being controlling in this case. The only purpose of the bell is to give warning. If the plaintiff did all that he could have done if there had been no bell, and in so doing got the only notice which the signal of a ringing bell could have given him, the failure of the bell to ring made no difference. Now he testified that he looked and listened as soon as he came to the edge of the mill, so that he could see up in the direction from which the train came. "Q. Well, from the time you got past this mill to the time of the accident, were you looking all the time. A. Positively. I was watching * * * in the direction of the train which came on me."

As we have seen, he will not be heard to say that he did not see an object which he must have seen if he looked. There was error in refusing to grant the prayer for a directed verdict.

*Judgment reversed, without a new trial, with costs to appellant.*