727 A.2d 396 (1999)
125 Md. App. 25
George P. SAPONARI, Individually and as Personal Representative of the Estate of Marsha E. Saponari
v.
CSX TRANSPORTATION, INC.
No. 838, Sept. Term, 1998.
Court of Special Appeals of Maryland.
April 8, 1999.
*397 Keith W. Donahoe (Koonz, McKenney, Johnson, DePaolis & Lightfoot, on the brief), Greenbelt, for appellant.
Stephen B. Caplis (Eric R. Harlan and Whiteford, Taylor & Preston, L.L.P., on the brief), Baltimore, for appellee.
Argued before DAVIS, EYLER and SONNER, JJ.
DAVIS, Judge.
Marsha E. Saponari, wife of appellant, George P. Saponari, was killed on August 9, 1994 when she was struck by a CSXT freight train while attempting to cross the railroad tracks at a commuter station in Laurel, Maryland. Appellant, individually and as personal representative of the estate of his deceased wife, brought suit on April 16, 1996 against appellee, CSX Transportation, Inc. (CSXT), in the Circuit Court for Prince George's County. Appellant claimed negligence by appellee, alleging wrongful death individually and pursuing a survivor's claim on behalf of the estate. Appellee denied negligence and raised the affirmative defenses of contributory negligence and assumption of the risk. Following discovery, appellee made a motion for summary judgment which was denied by the court (Sothoron, J.) on October 16, 1997.[1]
A jury trial began on March 16, 1998, and appellee made motions for judgment on the issues of contributory negligence and assumption of the risk at the close of appellant's evidence and at the conclusion of all the evidence. Both of the motions were denied. The court instructed the jury on the issues of negligence, contributory negligence, and, despite objection by appellant's counsel, assumption of the risk. On March 19, 1998, the jury returned its verdict and answered special interrogatories submitted to it by the court as follows: appellee was negligent, the decedent was not negligent, and the decedent assumed the risk of her death. Consequently, the court entered judgment for appellee on April 8, 1998.[2] Appellant timely filed an appeal on April 9, 1998 and presents for our *398 review one question that we restate as follows:
I. Did the trial court err by submitting the issue of assumption of the risk to the jury?
Appellee filed a cross-appeal on April 15, 1998 and presents the following question that we restate and restructure as follows:
II. Did the trial court err by denying appellee's motion for summary judgment and subsequent motions for judgment because the decedent was contributorily negligent and assumed the risk of her death as a matter of law?
We answer appellant's question in the negative and appellee's question in the affirmative. Therefore, we vacate the court's judgment and remand the case for entry of a judgment in favor of appellee.

FACTS
On the morning of August 9, 1994, at approximately 8:30 a.m., appellant drove his wife to a commuter train station located in Laurel, Maryland, so that she could take a Maryland Rail Commuter (MARC) train to her job in Washington, D.C. Before addressing the accident at issue, it is helpful to describe the setting of the Laurel Train Station. The station building and a commuter parking lot are adjacent to the southbound tracks while a passenger shelter for inclement weather is on the northbound side of the tracks. Because of a steep hill behind the shelter, the road accessing the northbound side is well below the level of the tracks. The road accessing the southbound side, however, leads into the commuter parking lot and is level with the railroad tracks. Therefore, a person wishing to reach the station or southbound tracks from the northbound side must either walk up a flight of steps next to the shelter and use a wooden walkway to cross the two sets of active railroad tracks or proceed through a tunnel beneath the tracks that leads directly to the southbound side.
If a person chooses to use the stairs adjacent to the shelter on the northbound side, at the top of the staircase there is a six-foot platform before a two-foot yellow warning zone that abuts the northbound track. An individual must look to the left upon reaching the platform to ascertain whether a train is coming from the southbound direction. The shelter, however, obstructs a person's view of the northbound track for the first three feet of the platform. Within the next three feet before the yellow warning zone, a person is able to see 640 feet up the northbound track.
Appellant's wife regularly commuted to her job from this station, usually driving herself and parking in the commuter lot. On the day in question, however, appellant dropped off his wife and she exited the car on the northbound side below the tracks. Because she needed to go to the southbound tracks for her commute to Washington, D.C., the decedent had to cross the tracks. Instead of walking through the tunnel to reach the southbound side, the decedent chose to proceed up the stairs adjacent to the shelter and cross the railroad tracks via the wooden walkway. After arriving at the top of the stairs, the decedent's next few steps are a matter of dispute between the parties. Tragically, however, the undisputed result was that, when the decedent stepped onto the walkway and began crossing the northbound tracks, appellee's freight train struck and killed her. We shall set forth the facts that may be ascertained from testimony at trial and the parties' briefs regarding the decedent's path prior to her untimely death.
Immediately before appellant's wife began to ascend the stairs that morning, John Gianetti, a local politician, handed her a campaign brochure. At the top of the steps, testimony reflects that the decedent may have "paused for a second," but never broke stride before crossing the yellow warning zone and walking onto the northbound tracks. Furthermore, although it is apparent that the decedent made a "slight nod to the left," it is unclear whether she ever looked to ascertain whether a train was approaching from the southern direction. Unfortunately, a freight train traveling at fifty-two miles per hour[3] was only approximately sixty feet away when the decedent stepped onto the northbound track. Evidence demonstrates that the train *399 failed to sound the horn signaling its approach prior to reaching the station; however, the horn was sounded when the decedent began to cross the track, although it is disputed whether the sound actually was heard before or after the train struck the decedent. With less than a second to react once she reached the northbound track, appellant's wife was struck by the freight train and killed.
Appellant subsequently brought suit, individually, for wrongful death and on behalf of the estate based on a survivor's suit, on April 16, 1996 in the Circuit Court for Prince George's County.

DISCUSSION

I
Appellant first contends that the trial court erred by submitting the assumption of the risk issue to the jury. Assumption of the risk is "an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk." Baltimore Gas and Elec. Co. v. Flippo, 348 Md. 680, 705, 705 A.2d 1144 (1998) (quoting Rogers v. Frush, 257 Md. 233, 243, 262 A.2d 549 (1970)). If proven, assumption of the risk is a complete bar to recovery because it serves as "a previous abandonment of the right to complain if an accident occurs." ADM Partnership v. Martin, 348 Md. 84, 91, 702 A.2d 730 (1997) (quoting Warner v. Markoe, 171 Md. 351, 360, 189 A. 260 (1937)).[4] The elements of assumption of the risk are well settled in Maryland, and the defendant must prove that the plaintiff "(1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." Flippo, 348 Md. at 706, 705 A.2d 1144 (quoting ADM Partnership, 348 Md. at 91, 702 A.2d 730).
In the determination of these elements, "an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him." ADM Partnership, 348 Md. at 91, 702 A.2d 730 (quoting Gibson v. Beaver, 245 Md. 418, 421, 226 A.2d 273 (1967)). Although the question of whether the plaintiff assumed the risk is normally for the jury, if it is clear that an individual of normal intelligence, in the plaintiff's position, must have understood the danger, then the issue is for the court. See id. at 91-92, 702 A.2d 730; Schroyer v. McNeal, 323 Md. 275, 283-84, 592 A.2d 1119 (1991). Because the plaintiff needs only to be aware of the risk and then voluntarily undertake it, the defendant is not required to prove that the plaintiff was negligent. See Schroyer, 323 Md. at 282-83, 592 A.2d 1119. Applying these principles, we turn now to appellant's contention that the trial court erred by submitting the issue of assumption of the risk to the jury.[5]
*400 Appellant argues that knowledge of the danger, the first element of the assumption of risk defense, requires more than the knowledge of a general danger in crossing railroad tracks. Instead, appellant submits that appellee was required to prove that the decedent had actual knowledge of the danger posed by the particular train that struck her, not by a train in general. As support for this argument, appellant relies on Rogers v. Frush, supra, wherein the Court of Appeals concluded that the plaintiff, who was injured by an automobile while riding a motorcycle without a helmet, did not assume the risk of injury. The Court reasoned that, even if the plaintiff had knowledge of and appreciated the risk, riding without a helmet did not relieve the defendant of her obligation to operate the automobile in a prudent manner. See Rogers, 257 Md. at 244, 262 A.2d 549.
Appellant further relies on Flippo, supra, in which a ten-year-old child was injured while climbing a tree when he came in contact with a utility company's electric wire. In Flippo, the jury returned a verdict against the utility company, and the Court of Appeals held that the company was not prejudiced by the trial court's refusal to submit the issue of assumption of the risk to the jury. See Flippo, 348 Md. at 707, 705 A.2d 1144. The Court opined:
In order to succeed on a defense based on its theory of assumption of risk, [defendant] would bear a somewhat heavier burden of proof: that [the plaintiff] actually knew of the potential danger of overhead electric wires and actually knew of the presence of this particular wire when he voluntarily subjected himself to a risk of contact with the wire by climbing the tree.
Id. (quoting Baltimore Gas and Elec. Co. v. Flippo, 112 Md.App. 75, 96, 684 A.2d 456 (1996)). Appellant asserts that appellee was unable to prove at trial that the decedent had knowledge of the particular train that struck her and, therefore, the court should not have submitted the issue of assumption of risk to the jury. We disagree.
As noted, an objective, rather than subjective, standard is used to determine whether a person had knowledge of the risk. See ADM Partnership, 348 Md. at 91, 702 A.2d 730. Crossing railroad tracks at a commuter station is an action that a person of adult age and normal intelligence should recognize as dangerous. In addition, the decedent was a regular commuter at the station and knew of the proximity of the steps to the tracks and of the shelter's obstruction of the northbound track until a few feet before the yellow warning zone. Flippo is distinguishable from the instant case because a ten-year-old child climbing a tree cannot be said to have the same awareness of encountering a power line that an adult crossing railroad tracks at a commuter station should have of an approaching train. Therefore, while the child was required to have knowledge of the particular power line, an objective standard leads to the conclusion that a jury reasonably could have found that the decedent in the instant case had knowledge of the danger of being struck by a train crossing at that location.
Appellant's reliance on Rogers also is misplaced because the accident in Rogers would have occurred regardless of whether the plaintiff was wearing a helmet. Consequently, the plaintiff did not relieve the defendant of the obligation to act carefully. Our conclusion finds support in the following holding of the Court of Appeals regarding the right of recovery in similar situations:
These [allegations] substitute, as the test of recovery, actual knowledge that no train or engine was approaching, for the due care and caution required by the law in endeavoring to ascertain this fact. The right of recovery does not depend upon the accuracy of the plaintiff's information as to the approach of the train, but upon the measure of care and caution exercised to obtain accurate information, under all the circumstances of the case.
Baltimore & Ohio R.R. Co. v. Stumpf, 97 Md. 78, 97, 54 A. 978 (1903). The decedent in the present case had knowledge of and appreciation for the danger;[6] thus, the next *401 question becomes whether she voluntarily exposed herself to the risk of being struck by a train.
Appellant contends that appellee failed to demonstrate that the decedent, by intentionally crossing the tracks despite her knowledge of the danger, voluntarily consented to the risk. Regarding voluntary consent, the Court of Appeals has held that,
in order for a plaintiff to assume voluntarily a risk of danger, there must exist "the willingness of the plaintiff to take an informed chance," Schroyer, 323 Md. at 283, 592 A.2d at 1123; there can be no restriction on the plaintiff's freedom of choice either by the existing circumstances or by coercion emanating from the defendant.
ADM Partnership, 348 Md. at 92, 702 A.2d 730. When a plaintiff is confronted with "a choice of evils," such a restriction destroys the ability to choose freely. See id. at 93, 702 A.2d 730 (citation omitted).
In the case sub judice, however, the decedent was not confronted with coercion or a restriction of choice. The decedent could have avoided the danger by taking the underpass to reach the southbound side of the tracks instead of actually crossing the tracks themselves. Furthermore, the decedent was aware both of the top of the steps' proximity to the tracks and of the obstruction caused by the shelter until the last half of the platform before the yellow warning zone. As a regular commuter familiar with the station, the decedent knew her options and decided to "take an informed chance" that she could cross the tracks without being injured by a train. Our conclusion that the decedent voluntarily exposed herself to the risk is supported by Rountree v. Lerner Dev. Co., 52 Md.App. 281, 447 A.2d 902 (1982), in which we opined that, "where there is a reasonably safe alternative open, the plaintiff's choice of the dangerous way is a free one, and may amount to both contributory negligence and assumption of risk." Rountree, 52 Md.App. at 286, 447 A.2d 902 (quoting Prosser, Law of Torts at 451-52 (4th ed.1971)). Consequently, we conclude that the court did not err in submitting the assumption of risk issue to the jury. Indeed, as discussed below, we hold that the decedent assumed the risk as a matter of law.

II
Appellee contends on cross-appeal that the trial court erred by denying its motion for summary judgment and subsequent motions for judgment because the decedent was contributorily negligent and assumed the risk of her death as a matter of law.[7] Before addressing the merits of appellee's contention, we summarize the appropriate standard of review. Regarding summary judgment, a trial court shall enter judgment in favor of the moving party if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Baltimore Gas and Elec. Co. v. Lane, 338 Md. 34, 42-43, 656 A.2d 307 (1995). Therefore, the standard of appellate review is whether the trial court was legally correct. See id. at 43, 656 A.2d 307. When reviewing a trial court's decision on a motion for judgment, an appellate court determines whether there was sufficient evidence to create a jury question. See Martin v. ADM Partnership, 106 Md.App. 652, 657, 666 A.2d 876 (1995), rev'd on other grounds, 348 Md. 84, 702 A.2d 730 (1997). It is apparent that the trial court correctly denied appellant's motion for summary judgment because there were genuine issues of material fact and, thus, we shall confine our discussion to whether there was sufficient evidence for the court to deny the motions for judgment at the close of the evidence.

*402 A
Appellee first argues that the decedent was contributorily negligent as a matter of law by allegedly failing to stop, look, and listen before crossing the railroad tracks. Contributory negligence "is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." Flippo, 348 Md. at 703, 705 A.2d 1144 (quoting Campfield v. Crowther, 252 Md. 88, 93, 249 A.2d 168 (1969)). Generally, the issue of contributory negligence is for the jury as long as "there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom." Id. (quoting Reiser v. Abramson, 264 Md. 372, 377-78, 286 A.2d 91 (1972)). Moreover, "[i]n order to establish contributory negligence as a matter of law, `the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds.'" Id. (quoting Reiser, 264 Md. at 378, 286 A.2d 91). We also must "give due consideration not only to all inferences of fact tending to support the opposite view, but also to the important presumption that [the decedent] exercised ordinary care for [her] own safety." Pachmayr v. Baltimore & Ohio R.R. Co., 157 Md. 256, 262, 145 A. 611 (1929) (citations omitted).
Appellee relies upon Glick v. Cumberland & Westenport Elec. Ry. Co., 124 Md. 308, 92 A. 778 (1914), as support for its proposition that the decedent was negligent as a matter of law. In Glick, the Court of Appeals held that "a railroad track is a signal of danger, and that one attempting to cross it must, in order to avoid the imputation of negligence, first look and listen, and, if the view be obstructed, stop, look, and listen for an approaching car...." Id. at 312, 92 A. 778. Failure at least to look and listen before crossing railroad tracks is negligence per se. See id. at 313, 92 A. 778. Furthermore, "if the crossing is one of more than ordinary danger, and the view of the tracks is obstructed at or near the place of crossing, it is the duty of the traveler to stop, look, and listen before he attempts to cross;...." Director General of Railroads v. Hurst, 135 Md. 496, 506, 109 A. 321 (1920). In the instant case, therefore, the decedent, in addition to looking and listening, also was required to stop before crossing because of the weather shelter that obstructed her view of the northbound track until the last few feet of platform before the track itself.
This rule, however, may be mitigated when customary warnings are given by a railroad. See Patapsco & Back Rivers R.R. Co. v. Bowers, 213 Md. 78, 129 A.2d 802 (1957); Pachmayr v. Baltimore & Ohio R.R. Co., supra; Baltimore & Ohio R.R. Co. v. Windsor, 146 Md. 429, 126 A. 119 (1924); Director General of Railroads v. Hurst, supra; Baltimore & Ohio R.R. Co. v. Stumpf, supra. The consideration of a failed warning must be given weight in determining the existence of contributory negligence because "in considering the question of contributory negligence the conduct of the plaintiff must be taken in connection with all the surrounding circumstances." Patapsco, 213 Md. at 85, 129 A.2d 802. Appellee distinguishes the holding in Patapsco, which discussed customary warnings located at crossings such as automatic bells, crossing gates, and flagmen, from the instant case in which the failed warning was the sounding of the train's horn as it approached the train station.
We shall look to additional cases discussed in Patapsco for guidance as to whether the failure to sound a warning horn also could mitigate the stop, look, and listen requirement so that a jury question would be created. One line of analogous cases holds that the issue of contributory negligence is a question for the court while the other line concludes that the issue is for the jury. First, we shall review those cases allowing the issue to go to the jury.
In Baltimore and Ohio R.R. Co. v. Stumpf, although the plaintiff looked four times both ways before crossing a set of railroad tracks that had safety gates raised, indicating that it was safe to cross, he was struck by the defendant's train. The Court of Appeals addressed, as a matter of first impression, whether safety gates that were required to *403 lower upon the approach of a train, but had not, could mitigate the rule requiring a person to stop, look, and listen before crossing the tracks. See Stumpf, 97 Md. at 93, 54 A. 978. The Court opined, "the mere fact that such gates are open cannot, alone, and in all cases, justify a traveler in going upon the track at the crossing, and that there are cases in which it may be the traveller's [sic] duty to make independent observation by stopping, as well as by looking and listening, before doing so." Id. On the other hand,
the authorities are numerous ... that open gates, or the absence of the usual signals of an approaching train or engine are implied assurances that no train or engine is approaching the crossing with intent to cross the street, upon which travelers on the street have a right to rely, and that if a traveler on the street be injured while crossing the railroad in such circumstances, the question whether he was guilty of contributory negligence is for the jury.
Id. at 95, 54 A. 978. Consequently, the Court in Stumpf concluded that the question of the plaintiff's contributory negligence properly was sent to the jury.
In Director General of Railroads v. Hurst, the evidence of contributory negligence was disputed because the plaintiff alleged that the defendant's watchman lowered a safety gate onto the decedent's automobile at a crossing, causing it to be struck by a train. The defendant, on the other hand, alleged that the plaintiff drove onto the train tracks without stopping before he could lower the safety gates. The Court affirmed that the question of contributory negligence was for the jury and elaborated on the holding in Stumpf, concluding that, "except where the traveller [sic] attempts to cross in the face of obvious danger, if he be injured while crossing through an open gate, the question whether he was guilty of contributory negligence is for the jury." Hurst, 135 Md. at 508, 109 A. 321.
Parallel with this reasoning, the Court, in Pachmayr v. Baltimore & Ohio R.R. Co., determined that the contributory negligence issue was proper for the jury. There, the decedent was killed while crossing railroad tracks in his truck when a train that passed him going in the opposite direction rolled backward, striking the plaintiff's truck. Additionally, the decedent was an employee of the railroad familiar with the usual custom, which was not followed in this case, of having a flagman at the crossing if the train's backward roll would cause danger to anyone trying to cross. It did not appear that the decedent "drove on the track without looking for dangers which might be imminent, and that he thus acted in heedless and complete reliance upon the assumption that the practice of posting flagmen for passing trains or locomotives would in no instance fail to be pursued." Pachmayr, 157 Md. at 262-63, 145 A. 611. Therefore, given the special circumstances of the decedent's experience and the failed warning, he was not so manifestly negligent that "rational minds would not differ as to its imprudence, [and] the issue should have been left to the jury for decision." Id. at 263, 145 A. 611.
The second line of cases concludes that the issue of contributory negligence is for the court, not the jury, to decide. In Baltimore & Ohio R.R. Co. v. Bruchy, 161 Md. 175, 155 A. 346 (1931), the plaintiff's truck was struck by a train as he attempted to cross the railroad tracks. In Bruchy, similar to the instant case, there was a mill that completely obstructed a person's view of the track until twenty-three feet from the crossing and a crossing bell that failed to ring. Although the plaintiff obtained a verdict in his favor, the Court of Appeals reversed and held him contributorily negligent as a matter of law. See id. at 180, 155 A. 346. The Court found incredulous the plaintiff's testimony that he looked for a train after passing the mill because, "if a witness who can see testifies that he looked, and did not see an object which, if he had looked, he must have seen, such testimony is unworthy of consideration." Id. at 179, 155 A. 346 (quoting Baltimore Traction Co. v. Helms, 84 Md. 515, 526, 36 A. 119 (1897)). After questioning how the plaintiff did not see a train that was only ninety-eight *404 feet away from the crossing, the Court concluded:
If he went on the crossing from a place of absolute safety without taking the precaution at least to turn his head in both directions, to look and listen for a train that might be approaching, he was guilty of contributory negligence, irrespective of whether or not he relied upon a crossing bell. There is a difference, at least in the degree of negligence, between proceeding across the tracks of a railroad without continuing to look, after having stopped and carefully looked and listened before going on the right of way, and going upon the right of way from a place of absolute safety without taking the trouble to look and listen at a point where an approaching train could be clearly seen.
Id. at 180, 155 A. 346. Because the plaintiff could not argue that he did not see a train that he must have seen if he had looked, the Court ruled that the lower court erred by not granting a directed verdict in favor of the railroad. See id.
In Baltimore & Ohio R.R. Co. v. Andrews, 190 Md. 227, 235, 58 A.2d 243 (1948), the Court again reversed a judgment for the plaintiff and entered a directed verdict in favor of the railroad based on contributory negligence. There, a thick hedge and undergrowth obstructed the vision of the railroad track until just before a traveler reached the crossing. In Andrews, the plaintiff died from the collision and both parties presented contrary witness testimony as to whether the plaintiff stopped and looked before attempting to cross. The Court, following Bruchy, concluded that the testimony was unworthy of consideration:
This is no less true of testimony that some one [sic] else looked and did not see. Thus the net difference between the testimony of plaintiff's witnesses and defendant's two witnesses is only the difference between attempting to cross, after stopping, without looking and attempting to cross without stopping or looking. Either version of the facts shows that the unfortunate man used no care at all at this familiardangerouscrossing and leaves no jury question as to what care an ordinarily prudent man would use under the circumstances.
Andrews, 190 Md. at 235, 58 A.2d 243.
The instant case is analogous to those discussed above in which judgment as a matter of law was proper. Before examining the decedent's actions, we note that the failed warning horn must be given a measure of consideration during such examination. The decedent did not pass through a gate that was improperly raised or cross where a flagman usually was located. These types of safety measures provide a heightened assurance of safety and allow an individual to rely on the railroad's duty to protect him or her from harm. A warning horn, as in the case sub judice, does not provide the same assurance because it is not a stationary fixture at the crossing itself and an individual's reliance on the horn is less reliable and predictable.
Although the freight train that struck the decedent did not stop at the station as a commuter train would have done, the decedent, a regular commuter, may have become accustomed to hearing a horn signaling an approaching train. Appellant's reply brief calls it "extremely unlikely" that the decedent was not familiar with the freight trains and their customary warnings. While this inference tends to prove the decedent may have relied on the warning horn, it also demonstrates that she was aware that trains would pass through the station without stopping. This knowledge of the decedent does not provide any proof that she acted reasonably by attempting to cross when she did. Even with knowledge of the horn, the decedent acted carelessly by failing to look for an approaching train when she knew that freight trains passed through the station without stopping. As the cases discussed above illustrate, the failure to give customary warnings does not relieve an individual of the duty to act prudently to ensure his or her own safety.
Even in the instance of a failed warning, Bruchy and Andrews demonstrate that a person is not relieved of his or her duty to stop, look, and listen "in the face of obvious danger." The decedent in this case stepped in front of a train that was approximately sixty feet away from her. Therefore, examining the decedent's actions and whether she stopped, looked, and listened for an approaching *405 train is dispositive.[8] Gregory Hardy, who was walking behind the decedent as she ascended the stairs toward the platform, testified that she "paused for a second" and made, not a "turn your head glance[,] but a slight nod to the left" before reaching the tracks. Despite the testimony of Hardy, the circumstances, as in Andrews, lead to no other conclusion than that the decedent did not use reasonable care before crossing this dangerous walkway. See Andrews, 190 Md. at 235, 58 A.2d 243.
It is apparent that the decedent should have been able to see the train if she looked once the shelter was no longer obstructing her vision because the train was only approximately sixty feet away when she reached the northbound track. Testimony that she glanced left is insufficient to create a question of fact for the jury because if she actually looked, she would have seen a freight train that was approximately sixty feet away. Even when we view all evidence in the light most favorable to the non-moving party, there is no question that the decedent failed to stop and look for an approaching train from the position beyond the shelter where her view was unobstructed. Although this area only consists of a few feet, if the decedent had looked she certainly would have seen the approaching train. We cannot envision any other conclusion, as the circumstances of this accident rebut the presumption that the decedent acted reasonably for her own safety.
The decedent's need to stop before crossing is reinforced by the obstruction caused by the shelter. As observed supra, when "the view of the tracks is obstructed at or near the place of crossing, it is the duty of the traveler to stop, look, and listen before he attempts to cross...." Hurst, 135 Md. at 506, 109 A. 321. Therefore, in the face of no evidence that the decedent did more than pause for a second, we conclude that, even in the light most favorable to appellant, the decedent could not have stopped and looked without seeing the approaching train. Once she passed the shelter's obstruction, the decedent could have seen approximately 640 feet down the northbound track. This situation in which the traveler attempts to cross in the face of obvious danger is not for the jury. See Hurst, 135 Md. at 508, 109 A. 321. The danger was obvious and imminent, and a person acting reasonably for his or her own safety would not have crossed the tracks when the train was only about sixty feet away.
Consequently, the trial court erred in its denial of appellee's motion for judgment because there was not sufficient evidence that the decedent stopped and looked to ascertain whether a train was approaching. Furthermore, the failure of appellee to provide its required warning did not provide the decedent with enough of an assurance of safety to mitigate her duty to stop, look, and listen.

B
Appellee also contends on cross-appeal that the trial court erred because the decedent assumed the risk of her death as a matter of law. As discussed, supra, assumption of the risk requires that the plaintiff not only have knowledge and appreciation of the risk but also voluntarily confront the risk. See ADM Partnership, 348 Md. at 91, 702 A.2d 730.
It is undisputed that an adult of normal intelligence, much less a regular commuter, has knowledge of the risk of being hit by a train when crossing active railroad tracks. As the Court of Appeals stated, "when it is clear that a person of normal intelligence in the position of the [person injured] must have understood the danger, the issue is for *406 the court." Schroyer, 323 Md. at 283-84, 592 A.2d 1119 (citations omitted). Although appellant, relying on ADM Partnership, disputed the decedent's knowledge of being struck by the particular train that hit her, we concluded that this specific knowledge was unnecessary for an experienced adult commuter who decides to cross railroad tracks. As discussed above, this conclusion is bolstered by the decedent's specific knowledge of the occasional passage of a freight train through the Laurel station without stopping.
Here, the decedent had the option of crossing the tracks or using a tunnel beneath the tracks to avoid the danger. By crossing the tracks at a station where she was familiar with the dangers, the decedent voluntarily assumed the risk of being struck by a train. Even when viewed in a light most favorable to appellant, it is certain that the decedent assumed the risk of injury as a matter of law because she had knowledge and appreciation of the risk of being struck by a train and voluntarily chose to confront it when she crossed the tracks rather than use the underpass. Therefore, the trial court erred by not granting appellee's motion for judgment at the close of all the evidence.
JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
COSTS TO BE PAID BY APPELLANT.
NOTES
[1] Appellant also claimed negligence based on the freight train's alleged excessive speed. On this claim, not relevant to the appeal before us, the lower court granted summary judgment to appellee in its October 16, 1997 order.
[2] The docket entry for April 10, 1998 reflects that April 8, 1998 was the date upon which the court entered judgment.
[3] The speed limit at this portion of the track was fifty-five miles per hour.
[4] In Warner, the Court of Appeals distinguished the overlapping defenses of assumption of the risk and contributory negligence as follows:

Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs.
Warner, 171 Md. at 359-60, 189 A. 260.
[5] We note appellee's contention, based on appellant's failure to move for judgment at the close of all the evidence, that appellant failed to preserve his challenge to the court's submission of the assumption of risk issue to the jury. In support of this argument, appellee relies on Gittin v. Haught-Bingham, 123 Md.App. 44, 49, 716 A.2d 1063 (1998), in which this Court ruled that, "[h]aving neither moved for judgment nor objected to the jury instructions, appellant is precluded from arguing that the jury's verdict was in error." Appellee asserts that both the motion and the objection to the jury instructions were required for appellant properly to preserve the assumption of risk issue. We disagree because appellant's counsel renewed his objections, after the close of the evidence, to assumption of the risk being on the verdict sheet form and the instruction being given to the jury. In Gittin, we held that "[i]n order to preserve [appellant's] contentions concerning the law that should have governed the jury's deliberations, appellant was required to note exceptions to the trial court's jury instructions." Id. Therefore, appellant's objection to the jury instructions was sufficient to preserve the issue for appeal.
[6] Appellant's only argument that the decedent failed to appreciate the risk was that, because the decedent did not have knowledge of the risk, it was impossible for her to appreciate the risk. Having concluded that the decedent had knowledge of the risk of being struck by a train in part because she was judged as an adult of normal intelligence, it is clear that she appreciated the risk and we decline discussion of the issue.
[7] We note that the trial court never ruled on appellee's motion for judgment at the close of all the evidence. Instead, the court reserved its ruling and, after the jury returned a verdict in favor of appellee, the court stated that its "reservation... for the motion of judgment on the issue of contributory negligence and assumption of the risk is now moot in light of the jury's verdict." The trial court's failure to make a ruling does not affect our analysis of whether, at the close of the evidence, the court should have granted appellee's motion because the decedent was contributorily negligent or assumed the risk as a matter of law.
[8] Regarding whether the decedent listened for an approaching train, Richard Barney, who was distributing political campaign brochures, testified that he "heard no noise that would indicate a train was coming." Thomas Mawhood, who was standing at the bottom of the steps on the northbound side of the tracks, did not hear anything until "[a] loud noise which I believe was the train itself. And it was right at the top of the stairs." Additionally, other witnesses testified that they never heard a horn sound prior to the train moving past the station as it struck the decedent. Evidence was presented demonstrating that, when viewed in a light most favorable to appellant, the decedent may not have heard the train's approach before attempting to cross the tracks. This conclusion, however, does not allow appellant to overcome the decedent's failure to stop and look.